The People of the State of New York ex rel. Elmer L. Rice, Relator, *v.* Mark Graves and Others, as Tax Commissioners of the State of New York, Respondents.

Third Department, July 6, 1934.

*William Hamilton Osborne,* for the relator.

*Howard E. Reinheimer,* as *amicus curiæ,* for Jerome Kern and others.

*Joseph P. Bickerton, Jr.* [*Sidney R. Fleisher* of counsel], as *amicus curiæ.*

*John J. Bennett, Jr., Attorney-General* [*Joseph M. Mesnig, Assistant Attorney-General,* of counsel], for the respondents.

Heffernan, J. This is a certiorari proceeding under the provisions of the Personal Income Tax Law (Tax Law, §§ 199, 375) and the Civil Practice Act to review a determination of the State Tax

Commission in connection with the assessment of additional income tax against the relator for the calendar years 1929, 1930 and 1931.

The parties are in accord as to the facts and only questions of law are involved.

During the years in question relator was the author and owner of plays known by the title, " The Left Bank," " Counsellor at Law," " See Naples and Die," " Street Scene," " A Voyage to Purilia," " The Lady Next Door," " The Passing of Chow Chow," " On Trial " and " The Adding Machine." He was also the United States copyright proprietor thereof and had duly copyrighted the same in his own name in Washington, D. C., under the United States Copyright Law.

From the time of the enactment of the Personal Income Tax Law in this State in 1919 until 1928 the Tax Commission imposed and collected taxes upon income derived from copyrights in the form of royalties.

On May 14, 1928, the United States Supreme Court, by a vote of five to four of its members, in *Long* v. *Rockwood* (277 U. S. 142), affirmed the decision of the Massachusetts Supreme Court in the case of *Rockwood* v. *Long* (257 Mass. 573), in which the court of last resort of that Commonwealth held that the State had no right to impose an income tax upon royalties from patents or copyrights. *Long* v. *Rockwood* held definitely: " A State may not tax the income received by one of her citizens as royalties for the use of patents issued to him by the United States. * * * The courts of last resort in Pennsylvania and New York have held that a State may not tax patents granted by the United States. [Citing cases.] And no opinion to the contrary has been cited."

In deference to the ruling in *Long* v. *Rockwood* the State Tax Commission conformed thereto and altered its regulations and the administration of the law to provide that income in the form of royalties from patents and copyrights issued by the United States government was not required to be included in gross returns.

On his State income tax returns for the years 1929, 1930 and 1931 relator entered in the schedule on the State income tax blanks under " Non-taxable Income," the following sums derived by him from royalties from his United States copyrights received by him as follows: 1929, $37,432.98; 1930, $29,498.27; 1931, $54,887.13. The above amounts, although stated in his return, were not included in gross income on returns filed for those years, and no tax was paid thereon upon the filing of the returns, nor was any tax demanded by the State. During this period the State made no attempt to assess any tax against relator on such income. In fact, it regarded his copyright royalties exempt and so instructed him.

On May 16, 1932, the United States Supreme Court in the case of *Fox Film Corp.* v. *Doyal* (286 U. S. 123) by a unanimous decision overruled its own decision in *Long* v. *Rockwood*. The case of *Fox Film Corp.* v. *Doyal* (*supra*) involved the imposition of the gross receipts tax of the State of Georgia on the gross receipts of royalties from copyrights. The judges of Georgia's highest court were equally divided in opinion on the question presented. (172 Ga. 403.) The United States Supreme Court held that copyrights were not Federal instrumentalities and that the income derived from them was not immune from State taxation, and further that a non-discriminatory tax upon such royalties does not in the slightest degree hamper the execution of the policy of the Federal copyright statute. In concluding its opinion the court said: " The affirmance of the judgment in the instant case cannot be reconciled with the decision in *Long* v. *Rockwood*, 277 U. S. 142, upon which appellant relies, and in view of the conclusions now reached upon a re-examination of the question, that case is definitely overruled." Thereupon the Tax Commission again amended its regulations to provide that all royalties from patents or copyrights must be included in gross income.

On November 10, 1932, pursuant to the provisions of section 373 of the Tax Law, the Tax Commission effected a revision of the income tax returns of the relator filed within three years then past, and made assessments against the relator for the calendar years 1929, 1930 and 1931 of additional income tax aggregating $3,231.85 upon the amounts of income received by the relator in those years, as royalties from his copyrights. No question is here involved as to the statutory authority for such assessments but only the question as to the legality of exercising such authority.

The relator, under protest, in order to avoid the penalties threatened to be imposed, paid the additional assessment and then instituted the present proceeding to compel the State to refund the same. On this appeal relator contends that the State has no legal right to impose, retroactively, a tax upon income which was regarded as exempt during the three years prior to such imposition. The only question for determination is whether or not the State Tax Commission erred in applying the principle laid down in the *Fox Film* case, holding that income derived from United States copyrights was not immune from State taxation, to such income received in the years 1929 to 1931, inclusive.

The effect to be given to the action of a court of last resort when it reverses itself, is a subject which has given rise to prolific litigation

and has for centuries furnished a theme for philosophical discussion by jurists and text writers. Out of the age old discussion there have been developed two fundamentally opposing theories. According to one theory the decisions of the courts are always conclusive evidence of what the law is. Followers of the other school assert that the decisions are evidence, but not conclusive evidence, of the law. Mr. Justice CARDOZO, in his lectures entitled " The Growth of the Law," in connection with this subject, said (pp. 31, 32): " What are the rights of litigants who have acted upon a judgment of the highest court of a state to the effect that a statute is invalid, if a controversy between them comes before the same court after the earlier judgment has been overruled? You will find it hard to reach a solution of such a problem without wandering into a philosophical dissertation upon the nature of law in general." Again quoting (pp. 121, 122) from that eminent jurist: " No doubt there are many rules of property or conduct which could not be changed retroactively without hardship or oppression, and this whether wise or unwise in their origin. So far as I am aware, no judge ever thinks of changing them. The picture of the bewildered litigant lured into a course of action by the false light of a decision, only to meet ruin when the light is extinguished and the decision overruled, is for the most part a figment of excited brains."

A natural desire for stability in the law gave rise to a reliance on decided cases as far back as Bracton and the early Year Books of the fourteenth century. According to the orthodox theory of Blackstone, which still claims at least the nominal allegiance of most courts, a judicial decision is merely evidence of the law, not law itself; and when a decision is overruled it does not become bad law; it never was the law, and the discredited decision will be viewed as if it had never been and the reconsidered pronouncement regarded as law from the beginning. Despite the expressed disapproval of some courts of repute and certain eminent writers, the prevailing doctrine is not that the law is changed by the overruling decision, but that the court was mistaken in its former decision, and that the law is, and always was, as expounded in the later decision. It should be said, however, that many leading English and American writers on jurisprudence characterize this theory of law as childish fiction and champion the doctrine that the rules which the judicial organs of the State lay down in deciding cases constitute law. However, according to the great weight of authority the theory that courts make law is unsound. The courts do not make law, but simply declare law. A judicial decision is but evidence of the law. An overruling decision does not change law but impeaches the overruled decision as evidence of law. Adopting

the theory that courts merely declare pre-existing law it logically follows that an overruling decision operates retroactively. Courts have generally given retroactive effect to decisions which have overruled earlier precedents.

Where in reliance on the earlier decision a person has acquired contract or property rights which are valid under the law as then declared by the highest court of the State, or has done some act which according to that law is innocent, the logical outcome of this doctrine would often cause hardship and injustice. When confronted by this situation the great majority of the courts, at the call of justice, have refused to go the whole length of the doctrine and have held that though in general a change in judicial decision had a retrospective effect they would not apply it so as to impair vested rights, such as property rights or those resting on contracts. The United States Supreme Court in *Great Northern R. Co.* v. *Sunburst Co.* (287 U. S. 358), speaking through Mr. Justice CARDOZO, said: " A State in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward. It may say that decisions of its highest court, though later overruled, are law none the less for intermediate transactions. Indeed there are cases intimating too broadly [cf. *Tidal Oil Co.* v. *Flanagan*, 263 U. S. 444], that it must give them that effect; but never has doubt been expressed that it may so treat them if it pleases, whenever injustice or hardship will thereby be averted." Salmond in his work on Jurisprudence ([8th ed.] p. 197), in discussing the retrospective effect of a later decision, said: " The overruling of a precedent is not the abolition of an established rule of law; it is an authoritative denial that the supposed rule of law has ever existed. The precedent is so treated not because it has made bad law, but because it has never in reality made any law at all. It has not conformed to the requirements of legal efficacy. Hence it is that the overruling of a precedent, unlike the repeal of a statute, has retrospective operation. The decision is pronounced to have been bad *ab initio*. A repealed statute, on the contrary remains valid and applicable as to matters arising before the date of its repeal. The overruling of a precedent is analogous not to the repeal of a statute, but to the judicial rejection of a custom as unreasonable or as otherwise failing to conform to the requirements of customary law."

The effect of overruling a decision and refusing to abide by the precedent there laid down is retrospective and makes the law at the time of the overruled decision as it is declared to be in the last decision, except in so far as the construction last given would impair the obligations of contracts entered into, or injuriously affect

vested rights acquired in reliance on the earlier decision. (15 C. J. 960, and cases there cited.)

The general principle is that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former decision is bad law, but that it never was the law. To this the courts have established the exception that where a constitutional or statute law has received a given construction by the courts of last resort; and contracts have been made and rights acquired under and in accordance with such construction, such contracts may not be invalidated nor vested rights acquired under them impaired by a change of construction made by a subsequent decision. Thus, for instance, the construction of a statute of descents established by the decisions of the courts at the time of a quitclaim deed by heirs claiming under the statute becomes a part of the contract and must govern the rights of the parties as against a different construction thereafter adopted by overruling the former decisions. The true rule in such cases is held to be to give a change of judicial construction in respect to a statute the same effect in its operation on contracts and existing contract rights that would be given to a legislative repeal or amendment; that is to say, make it prospective but not retroactive. While there is high authority for the position that this is the only exception that should be allowed, yet some courts, in a case of unusual hardship, have extended the principle of this exception to criminal causes, and to cases where a title to real estate had vested. It has been held, however, that the principle should certainly not be further extended and applied to an erroneous decision on general mercantile law which is contrary to accepted doctrine and recognized business methods. While the exception above noted in respect to contracts made and rights acquired under a previous construction of a constitutional or statute law, is almost universally observed, yet in at least one jurisdiction it has been held that a decision by the highest court of the State holding a given statute constitutional will not be left in force, after a subsequent decision of the same court overruling the former decision and holding the statute unconstitutional, as to contracts entered into before the latter decision was rendered. According to this view a decision overruling a prior decision and holding unconstitutional a statute held to be constitutional by such decision does not impair the obligations of a contract entered into before the latter decision was rendered, as a decision of the court is not in fact a law, and if erroneously made cannot make a law. (7 R. C. L. 1010, and cases there cited.) Under the well-settled rules of jurisprudence of this State, it must be held that the law as pro-

nounced by the United States Supreme Court in *Fox Film Corp.* v. *Doyal* retroacts to the date of the overruled decision of *Long* v. *Rockwood,* and that the law of this State is and always was that copyrights granted by the United States may be subject to the New York personal income tax.

Courts are bound, in their very nature, to declare what the law is and has been, and not what it shall be in the future; if the courts were absolutely bound by their prior decisions, they would be without power to correct their own errors. (*Wood* v. *Brady,* 150 U. S. 18.) Contract rights cannot be impaired by a subsequent court decision altering the construction of the law. In *Woodruff* v. *Woodruff* (52 N. Y. 53) the court said: " The counsel for the appellant is quite correct in saying that a decision of a court overruling a prior decision is a legal adjudication that the prior decision was not the law at the time it was made, although there may be rights of contract acquired under the first which the last decision will not affect."

Relator relies on *Mercantile National Bank* v. *Lander* (109 Fed. 21; affd. in *Lander* v. *Mercantile National Bank,* 118 id. 785) as a controlling precedent in the case at bar. In our view of the matter the *Lander* case is of most doubtful persuasive force. The *Lander* case involved an Ohio tax statute and by a decision of the Ohio State courts in 1888, stockholders in national banks had been held entitled to deduct from the valuation of their shares, for tax purposes, the amount of their indebtedness. In 1897 the State court reversed itself. Thereupon the defendant county treasurer sought to collect taxes, based upon the decision in 1897, upon the stock of the plaintiff bank for the years 1894, 1895 and 1896. Suit was brought in the United States Circuit Court in Ohio to enjoin such collection. The district judge held that the later decision was not retroactive and did not authorize the collection of taxes on the basis of the later decision, with respect to assessments before that time. On appeal to the Circuit Court of Appeals (118 Fed. 785), the decision of the lower court was affirmed, but upon an entirely different ground, namely, that the State statute under which the taxing officer sought to impose taxes for the years 1894, 1895 and 1896, did not authorize such action. The Circuit Court of Appeals' opinion is completely silent with respect to the question as to whether the later decision of the Ohio State court would have retrospective operation, provided statutory authority therefor existed.

In a case such as the instant case, not involving the construction of the Constitution or laws of the Federal government, the State courts are not bound by decisions of the Federal courts. At best,

the decision of the district judge for the Northern District of Ohio (109 Fed. 21), so strongly relied on by relator, could have only persuasive force. As a precedent it is valueless, but such persuasive force as that decision might carry is entirely dissipated by the fact that, though the decision was affirmed, the Circuit Court of Appeals did not adopt the reasoning upon which the decision was based. Opposed to this single discordant decision of a single judge is the well-settled principle of law on the subject in this State, as laid down by our Court of Appeals and adhered to over a long period of years. Thus in *Butler* v. *Van Wyck* ([1841] 1 Hill, 438, at p. 462) the court said: " It is going quite too far to say that a single decision of any court is absolutely conclusive as a precedent. It is an elementary principle, that an erroneous decision is not bad law — it is no law at all. It may be final upon the parties then before the court, but it does not conclude other parties having rights depending on the same question." This quotation was cited with approval in *Leavitt* v. *Blatchford* (17 N. Y. 521).

Relator urges that the matter before us comes within the doctrine of *stare decisis*. As has already been pointed out, the decision in *Long* v. *Rockwood* was never the law of the land and hence the doctrine of *stare decisis* does not cover the case. The obligation imposed upon the courts by the doctrine of *stare decisis* is a moral obligation only. This doctrine has for its objects the salutary effect of uniformity, certainty and stability of the law. The doctrine of *stare decisis*, like almost every other legal rule, is not without its exceptions. It does not apply to a case where it can be shown that the law has been misunderstood or misapplied, or where the former determination is evidently contrary to reason (*Rumsey* v. *N. Y. & N. E. R. R. Co.*, 133 N. Y. 79.) Chancellor KENT (1 Kent Com. [13th ed.] 477), in commenting upon the rule of *stare decisis*, said that " it is probable that the records of many of the courts of this country are replete with hasty and crude decisions; and in such cases ought to be examined without fear, and revised without reluctance, rather than to have the character of our law impaired, and the beauty and harmony of the system destroyed by the perpetuity of error."

From what has been said we are convinced that the decision of the United States Supreme Court in the *Fox Film* case is to be given a retrospective effect, except as to any possible vested rights or contracts made or entered into in reliance upon the overthrown decision of *Long* v. *Rockwood*. No well-founded claim can be made that the relator acquired any vested right or entered into any contract under the former decision. No such claim in fact is made, nor are there any property rights involved.

We have not overlooked the relator's contention that a retrospective application of the decision in the *Fox Film* case works an apparent hardship as to him. We concede as much. The answer to that argument, however, is that the hardship in question is no greater on the relator than was that suffered by the State by the erroneous decision in *Long* v. *Rockwood*. The ruling in that case deprived the State of revenue to which it was justly entitled. The construction in the instant case involves no hardship upon the relator beyond the payment of those taxes which he would have been required to pay in any event had the discredited decision in *Long* v. *Rockwood* never been made.

Courts have repeatedly said that an income tax, apportioned to the ability of the taxpayer to bear it, is founded upon the protection afforded to the recipient of the income by the State, in his person, in his right to receive the income and in his enjoyment of it when received. The State gives to the taxpayer security to life, liberty and property and it exacts in return a contribution to the support of that government, measured by and based upon the income, in the fruition of which it defends him from unjust interference. (*Lawrence* v. *State Tax Commission*, 286 U. S. 276; *Maguire* v. *Trefry*, 253 id. 12.)

The determination of the State Tax Commission should be confirmed, with fifty dollars costs and disbursements against the relator.

HILL, P. J., McNAMEE, CRAPSER and BLISS, JJ., concur.

Determination confirmed, with fifty dollars costs and disbursements.