SEARS, ROEBUCK & Co., Plaintiff, *v.* 9 AVENUE-31 STREET CORPORATION and Another, Defendants.

Supreme Court, Trial Term, New York County, February 28, 1936.

*Root, Clark, Buckner & Ballantine* [*John M. Harlan* and *Henry J. Friendly* of counsel], for the plaintiff.

*Pfeiffer & Crames* [*Alexander Pfeiffer* and *Morris G. Duchin* of counsel], for the defendants.

LAUER, J. This suit was instituted to recover damages upon two causes of action. The first cause of action is against the corporate defendant alone and is predicated upon the breach of the terms of a written lease entered into between the plaintiff, Sears, Roebuck & Co., as tenant, and the defendant 9 Avenue-31 Street Corporation, as landlord. The second cause of action is brought upon a bond given by the corporate defendant 9 Avenue-31 Street Corporation, as principal, and the defendant Max N: Natanson, as surety, to secure the plaintiff against a breach of the terms of the lease by the defendant 9 Avenue-31 Street Corporation, from January 15, 1931, to December 31, 1931, during which period of time the rent was prepaid by the plaintiff.

The lease alleged to have been broken was entered into between the plaintiff, Sears, Roebuck & Co., as tenant, and the defendant

9 Avenue-31 Street Corporation, as landlord, on the 15th day of April, 1930. Pursuant to the terms thereof a considerable amount of space was leased to the plaintiff in a building to be erected by the landlord on a plot of land located at the southeast corner of Ninth avenue and West Thirty-first street, New York city. The space was leased at a rent of ninety-three cents per square foot per annum, which amounted to $16,718.46 per month, and was for a twenty-one-year term commencing January 15, 1931, and terminating June 30, 1952. The lease provided that the rent from January 15, 1931, to December 31, 1931, less interest thereon, should be prepaid by the tenant upon the furnishing of a surety satisfactory to the tenant. Provision also was made in the lease for the landlord to furnish certain services and to heat the building at a stipulated temperature.

On November 26, 1930, the plaintiff, at the request of the landlord, prepaid its rent from January 15, 1931, to December 31, 1931, and accepted the defendant Max N. Natanson, president of 9 Avenue-31 Street Corporation, as surety. The plaintiff entered upon the premises on January 15, 1931, at which time the building was incomplete in several minor respects. Within a period of approximately two weeks after the plaintiff entered into occupancy of the premises the landlord failed to furnish the necessary elevator service, electric current and heat as provided in the lease. The plaintiff remained in the premises, completed the building, and paid for the furnishing of these services.

On April 1, 1931, the defendant 9 Avenue-31 Street Corporation defaulted in the payment of an interest installment on an existing second mortgage. A foreclosure action was instituted under the title of Monro-King & Gremels Realty Corporation, plaintiff, v. 9 Avenue-31 Street Corporation, defendant, to which the plaintiff herein was made a party defendant.

On May 2, 1931, Samuel Lax, Esq., was appointed receiver of the rents and profits in this foreclosure action. After the appointment of the receiver the plaintiff herein continued to advance sums to the receiver to pay for the heating of the building and furnishing necessary services.

Shortly after his appointment, the receiver made formal demand upon the plaintiff, Sears, Roebuck & Co., that it attorn to him and pay for the use and occupation of the premises occupied by it. This demand was refused by the plaintiff. A motion was then made by the receiver to compel payment for the use and occupation of the space occupied by the tenant. The plaintiff herein on the same day served upon the receiver, the plaintiff in that action, Monro-King & Gremels Realty Corporation, and the defendant

9 Avenue-31 Street Corporation, an order requiring the several parties to show cause why the demand made upon it by the receiver should not be deemed to constitute a disaffirmance of the lease and why it should not be permitted to surrender possession of the premises without further liability thereunder. The motion of the plaintiff was denied. The motion of the receiver was granted and, pursuant to the order entered thereon, the plaintiff herein was required to pay from May 2, 1931, the reasonable value for the use and occupation of the space occupied by it at the rate of $13,000 per month. Appeals from both orders were taken to the Appellate Division by the plaintiff herein and collection of occupational value was stayed pending the decision on the appeals, which were consolidated and argued as one. The Appellate Division on November 6, 1931, in a unanimous opinion (*Monro-King & Gremmels Realty Corp.* v. *9 Avenue-31 Street Corp.*, 233 App. Div. 401), affirmed the order directing the payment for the use and occupation but modified it by providing that the plaintiff herein should be required to pay for use and occupation only up to and including the date of its removal from the premises. The order denying the plaintiff's motion was reversed and dismissed. Thereafter, on November 12, 1931, the plaintiff herein paid to the receiver the sum of $73,033.36 for the use and occupation of the space occupied by it from May 2 to November 30, 1931. This sum was arrived at pursuant to an agreement with the receiver, after deducting from the amount ordered by the court to be paid, certain sums advanced to the receiver for services, which, under the terms of the lease, were to have been furnished by the landlord. A further payment was made to the receiver on or about December 8, 1931, for use and occupation of the premises for the month of December. During the month of November the plaintiff herein gave notice to the receiver and to the defendant 9 Avenue-31 Street Corporation of its intention to vacate and surrender possession of the leased premises and to treat the receiver's demand for payment for use and occupation as an eviction. Negotiations between the receiver and the plaintiff herein culminated in an agreement to a surrender by Sears, Roebuck & Co. without physically removing from the premises and in a new lease for a term of five years at a rent of eighty cents per square foot per annum. This arrangement was approved by the court on January 26, 1932. A new lease was executed and delivered on June 10, 1932, effective as of June 1, 1932. Final judgment of foreclosure and sale was entered on April 14, 1933. No actual sale of the property took place until March 25, 1935.

The plaintiff, through its causes of action set forth in the complaint, alleges that the corporation defendant is liable in damages

under the lease and both defendants liable in damages upon the bond for the following defaults and amounts: (1) For the sum of $87,538.21 as damages for the breach of the covenant of quiet enjoyment by reason of which the plaintiff was required to make payments in that amount to the receiver of the rents and profits for use and occupation during a period for which it had prepaid its rent; (2) for the sum of $30,776.76 as damage for failure to supply services as agreed during the period from January 15, 1931, to December 31, 1931; and (3) for the sum of $1,939 as damages for the failure to complete the building as covenanted in the lease.

The defendants deny liability and the corporation defendant asserts a counterclaim in the sum of $12,980 for work, labor and services rendered by it for and at the request of the plaintiff.

It appears to me that the first essential point to be determined is the effect of the demand made by the receiver upon the plaintiff that it attorn to him and pay for the use and occupation of the premises. Was this demand and the steps taken to enforce it a breach of the covenant of quiet enjoyment and an eviction subjecting the landlord to damages?

It would seem that, at the time the receiver made his demand upon the plaintiff, as the law had up to that time been enunciated and as it was later determined in the motions heretofore referred to as it affected the rights of the parties to this action, the receiver was justified in making the demand upon the plaintiff for compensation for the reasonable value of the use and occupation of the premises occupied by it under the lease. The law as it was regarded by the Appellate Division on the motions affecting the demands of the receiver herein was clearly stated (*Monro-King & Gremmels Realty Corp.* v. *9 Avenue-31 Street Corp.*, 233 App. Div. 401, at p. 403): " The law is settled in this State that after a receiver of the mortgaged premises has been appointed, regardless of any agreement previously made by the landlord, the receiver is entitled to receive, and the occupants are required to pay, the reasonable value of the use and occupation. Even if the tenants have paid the stipulated rent in advance they are required to pay the receiver for the use and occupation of the premises. * * *

" But where * * * the receiver has elected to disaffirm the lease and has asked for the fixing of the reasonable rental of the premises, and in demanding payment of the sum so fixed by the court is compelling the tenant to pay twice for the privilege of occupying the property, the tenant forthwith has an option either to pay the reasonable rent or to vacate and surrender possession of the premises to the receiver."

It would appear, therefore, from this statement of the law that, since the plaintiff herein remained in the premises, the payments by the plaintiff to the receiver for use and occupation were proper and the demand of the receiver and the steps taken to enforce the demand constituted an eviction and a breach of the covenant of quiet enjoyment.

The law, however, appears not to have been so well settled as this last quotation indicated, for only a short time subsequent to the decision just quoted from, the Appellate Division itself in another case (*Prudence Co.* v. *160 West 73d Street Corp.*, 235 App. Div. 543), reached a contrary determination. The law appears now to be settled (*Prudence Co.* v. *160 West 73d Street Corp.*, 260 N. Y. 205) quite the contrary of what was stated as the settled law in the case from which I have heretofore quoted. After disapproving of the decision in *Monro- King & Gremmels Realty Corp.* v. *9 Avenue-31 Street Corp.* (*supra*), the Court of Appeals in the *Prudence Company* case said (at p. 211):

"A mortgage is only a lien on the mortgaged real property. Title rema'ns in the mortgagor and those claiming under or through the mortgagor until the lien is foreclosed. Foreclosure of the lien does not take place upon the commencement of a foreclosure action, but upon a sale under a judgment of foreclosure. Though, during the pendency of the action, a court of equity has power to issue interlocutory orders for the protection of an asserted lien, such orders must be auxiliary to the right to foreclose the lien, and cannot deprive any party of a title or a right, which though subordinate to the lien of the mortgage, survive and are valid until the lien is foreclosed by a sale under a judgment of foreclosure. * * *

" So long as the mortgaged premises have not been sold under a judgment of foreclosure, the agreements are valid and subsisting. The occupants are required to pay the stipulated sum to the owner and the owner may not disturb the possession of the tenants. Until the lien of the mortgage is foreclosed the mortgagee has no paramount title which would justify eviction of the occupants or abrogation of the agreements."

In the instant case the demand of the receiver that the plaintiff herein attorn and pay for the use and occupation was a demand not justified by the law as it has now been determined to exist. (*Prudence Co.* v. *160 West 73d Street Corp.*, *supra*.) The acts of the receiver were not warranted by sound principles of law although based upon and apparently justified by some of the prior decisions. There was actually no eviction by, nor attornment to, the holder of a paramount title, and consequently no breach of the covenant of quiet enjoyment if the law as stated by the Court of Appeals is determinative.

Where a court overrules either itself or a prior precedent the effect is that the later decision declares what the law always was and that the holdings of the prior decisions were wrong and never were the law. This effect of a later decision is set forth in the case of *People ex rel. Rice* v. *Graves* (242 App. Div. 128, at pp. 131, 132): "According to the orthodox theory of Blackstone, which still claims at least the nominal allegiance of most courts, a judicial decision is merely evidence of the law, not law itself; and when a decision is overruled it does not become bad law; it never was the law, and the discredited decision will be viewed as if it had never been and the reconsidered pronouncement regarded as law from the beginning. Despite the expressed disapproval of some courts of repute and certain eminent writers, the prevailing doctrine is not that the law is changed by the overruling decision, but that the court was mistaken in its former decision, and that the law is, and always was, as expounded in the later decision * * *. However, according to the great weight of authority the theory that courts make law is unsound. The courts do not make law, but simply declare law. A judicial decision is but evidence of the law. An overruling decision does not change law but impeaches the overruled decision as evidence of law. Adopting the theory that courts merely declare pre-existing law it logically follows that an overruling decision operates retroactively."

In this case of *People ex rel. Rice* v. *Graves (supra)*, however, there had been no prior determination between the same parties to the suit. In the instant case the corporate defendant, by reason of the plaintiff's cross-motion, had notice of the receiver's motion and the plaintiff's defense to it. The notice given was sufficient. No particular form of words is necessary in order to constitute notice. It is sufficient if a party is fully and fairly informed of the claim and has full opportunity to defend or to participate in the defense. The order made was binding on all parties, including the defendant corporation herein, and as between the parties to that litigation it stands as the law now controlling on the plaintiff and the defendant 9 Avenue-31 Street Corporation. (*Oceanic Steam Navigation Co., Ltd.,* v. *Campania Transatlantica Espanola,* 144 N. Y. 663; Freeman Law of Judgments [5th ed.], § 357, p. 743.)

The corporate defendant not only had knowledge of the jeopardy in which its tenant, the plaintiff herein, was placed, but it did, in fact, passively join in the appeal and was a party thereto.

"Obviously the power to decide includes the power to decide wrong, and an erroneous decision is as binding as one that is correct until set aside or corrected in a manner provided by law.

* * * It will not avail to say that another court might or undoubtedly would have decided the case differently, for the conclusiveness of the judgment where the court had jurisdiction of the issues before it is not destroyed because it may take a different view than some other court would take of the law governing the controversy." (Freeman Judgments, *supra*. See, also, *Hanna* v. *Stedman*, 230 N. Y. 326, 336, and cases there cited.)

The fact that the plaintiff herein did not pursue an appeal to the Court of Appeals does not relieve the corporate defendant of liability as there was no obligation on the part of the plaintiff to take such an appeal. (*Murphy* v. *City of Yonkers*, 213 N. Y. 124.)

The conclusion is inevitable that as between Sears Roebuck & Co., the plaintiff, and the defendant 9 Avenue-31 Street Corporation, that defendant, as a result of what transpired, must be held responsible for the eviction of the tenant and its effect — a breach of the covenant of quiet enjoyment.

The next consideration is what, if any, damage has the tenant suffered by reason of the breach of the covenant of quiet enjoyment.

This court should hesitate to impose damages upon the landlord in the instant case until all claims of damages are carefully scrutinized and it is determined that damages were actually sustained.

It is true that the plaintiff was obliged to pay the sum of $87,538.21 to the receiver for the reasonable value of the use and occupation of the premises occupied by it. However, by the very breach which necessitated this payment the plaintiff was enabled to secure the cancellation of the twenty-one-year lease with the corporate defendant which called for a monthly rental of $16,718.46 and to secure a new lease for a term of five years at a reduced rental of $14,381.47 per month. This reduction in rent resulted in a saving to the plaintiff of $2,336.99 per month. The new lease was made with the receiver, the very person who caused the breach of the covenant of quiet enjoyment. The plaintiff, claiming to have suffered the injury, joined with the receiver to secure the benefit of the reduced rental under the new lease which they executed. For the five-year term of the new lease the saving to the plaintiff will amount to $140,220.40. It would seem, therefore, that although there was a breach of the covenant of quiet enjoyment, the breach has failed to result in any actual loss or damage to the plaintiff.

The next question to be determined is whether the defendants or either of them are liable for the failure to supply the services heretofore mentioned and which the landlord agreed to furnish pursuant to the terms of the lease. The mere appointment of the receiver by the court did not serve to sever the defendant corporation's responsibility to furnish services under the lease.

The liability of the landlord under the lease to furnish the services continued until the lease was terminated. When the receiver demanded to be paid for the use and occupation and took steps to enforce his demands his conduct was inconsistent with the continuance of the plaintiff's tenancy under the lease. The lease was terminated when pursuant to the order of the court the plaintiff attorned to the receiver. It then became incumbent upon the receiver, if that was part of his agreement with the plaintiff as tenant, to furnish the necessary services. The plaintiff did not, in fact, suffer any additional loss as the receiver allowed the plaintiff a reduction in the amount expended by the plaintiff for such services from the sum fixed by the court as the reasonable value of the use and occupation. The plaintiff is, therefore, not entitled to any damages for the failure on the part of the landlord to furnish services after it attorned to the receiver. There is no question, however, that the defendant corporation is liable in damages for its failure to supply the agreed services prior to the appointment of the receiver, provided such damages were adequately proven at the trial.

The defendant corporation's liability to complete the building constituted a breach of its agreement. This breach occurred prior to the tenant's attornment to the receiver. The damages sustained by the tenant by reason of this breach are clearly the liability of the defendant corporation.

The defendant Max Natanson is sought to be held by reason of the bond executed by him to the plaintiff. This bond provided, among other things, that the surety (Natanson) " shall and do well and truly pay or cause to be paid to the Obligee [the plaintiff herein], its successors or assigns, any and all sums which Obligee, its successors or assigns, as tenant under said lease, shall be entitled to receive from principal [9 Avenue-31 Street Corporation] as landlord, pursuant to the provisions of said lease, by reason of the breach by principal, as landlord." I have heretofore decided that the landlord breached its agreement to complete the building and to furnish services prior to plaintiff's attornment to the receiver. The damages sustained by the plaintiff by reason of the breach were clearly within the wording of the bond and the defendant Max Natanson is held jointly liable thereon.

Several of the items paid by the tenant are disputed by the defendant landlord as not proper expenditures. These items are determined in the following manner: The defendants are not liable for electricity paid for the landlord's account pr'or to April 2, 1931, as the proof offered thereof was insufficient. However, the plaintiff is entitled to recover for the electricity paid by it for the defendant's account from April 2, 1931, to May 2, 1931, in the sum of $497.27.

698

No liability can be predicated for interest paid to the receiver, which interest accrued during the pendency of the appeal on the sums due for use and occupation, since the plaintiff had the use of the money during that period and suffered no damage. The defendants are not liable for expenditures made by plaintiff for legal services, as there has been a failure of proof of such services. The amount expended by the plaintiff to pay for liability insurance premiums on policies secured to protect the receiver are not allowed as damage, as they are purely the obligation of the receiver and the plaintiff was under no obligation to pay them. The plaintiff is entitled to recover against both defendants for all expenditures made in completing the building, including the amount conceded by the defendant corporation and the amount expended for radiation in the cellar, which was necessary to heat the premises to the seventy degrees Fahrenheit agreed to by the landlord and the tenant under the lease. The plaintiff is also entitled to recover against both defendants for all expenditures made to furnish services prior to the attornment to the receiver. All other expenditures made by the plaintiff are disallowed as damages.

Defendant 9 Avenue-31 Street Corporation's counterclaim, having been conceded in the full amount of $12,980, is allowed. The claims of the plaintiff are allowed against both defendants as follows: In the amount of $1,939 as damages incurred in the completion of the building; in the amount of $8,476.27 as damages incurred in furnishing necessary services, which sum includes electricity from April 2, 1931, to May 2, 1931, as well as the payroll of April 29, 1931. Appropriate interest on the respective amounts is also allowed. Submit judgment.