A. CUESTA & Co., SUCCRS., Plaintiff and Appellee, *v.* RAFAEL SANCHO BONET, TREASURER OF PUERTO RICO, Defendant and Appellant.

No. 7814.   Submitted November 21, 1938.—Decided January 19, 1939.

B. *Fernández García, Attorney General, Emilio de Aldrey,* and *R. García Cintrón, Assistants Attorney General* for appellant. *D. Guerrero Noble,* for appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the Court.

The Treasurer of Puerto Rico appeals from an adverse judgment in an action brought in a district court to recover certain taxes paid under protest. There is no question about plaintiff's right to recover. No jurisdictional question was raised in the district court. The amount involved was less than $500. The treasurer now seeks a reversal on the ground that the district court was without jurisdiction.

In *Jesús* v. *Gallardo,* 34 P.R.R. 412, this Court, construing Act 9 of 1924 (Session Laws, 70) held, as stated in the syllabus:

"Jurisdiction of the courts in actions for the refund of taxes paid under protest is determined by the amount involved."

Eight years later, in *Soto Gras v. Domenech, Treasurer*, 45 P.R.R. ——, it was held that the district courts had exclusive jurisdiction of suits to recover taxes paid under protest, regardless of the amount. The case of *Jesús v. Gallardo*, supra, was expressly overruled.

In *The Shell Co. (P.R.) Ltd. v. Pagán, Treasurer*, 51 P.R.R. ——, the Soto Gras case was distinguished and discredited but not expressly overruled. A year later, in *Serrallés v. Sancho Bonet, Treasurer*, 53 P.R.R. ——, this Court definitely overruled the Soto Gras case and again declared the law to be what it had previously declared the law to be in *Jesús v. Gallardo*, supra.

In a recent New York case, *People ex rel Rice v. Graves*, 242 App. Div. 128, the court said:

"The effect to be given to the action of a court of last resort when it reverses itself, is a subject which has given rise to prolific litigation and has for centuries furnished a theme for philosophical discussion by jurists and text writers. Out of the age old discussion there have been developed two fundamentally opposing theories. According to one theory the decisions of the courts are always conclusive evidence of what the law is. Followers of the other school assert that the decisions are evidence, but not conclusive evidence, of the law. Mr. Justice Cardozo, in his lectures entitled 'The Growth of the Law,' in connection with this subject, said (pp. 31, 32); 'What are the rights of litigants who have acted upon a judgment of the highest court of a state to the effect that a statute is invalid, if a controversy between them comes before the same court after the earlier judgment has been overruled? You will find it hard to reach a solution of such a problem without wandering into a philosophical dissertation upon the nature of law in general.' Again quoting (pp. 121, 122) from that eminent jurist: 'No doubt there are many rules of property or conduct which could not be changed retroactively without hardship or oppression, and this whether wise or unwise in their origin. So far as I am aware, no judge ever thinks of changing them. The picture of the bewildered litigant lured into a course of action by the false light of a decision

only to meet ruin when the light is extinguished and the decision overruled, is for the most part a figment of excited brains.'

''A natural desire for stability in the law gave rise to a reliance on decided cases as far back as Bracton and the early Year Books of the fourteenth century. According to the orthodox theory of Blackstone, which still claims at least the nominal allegiance of most courts, a judicial decision is merely evidence of the law, not law itself; and when a decision is overruled it does not become bad law; it never was the law, and the discredited decision will be viewed as if it had never been and the reconsidered pronouncement regarded as law from the beginning. Despite the expressed disapproval of some courts of repute and certain eminent writers, the prevailing doctrine is not that the law is changed by the overruling decision, but that the court was mistaken in its former decision, and that the law is, and always was, as exponded in the later decision. It should be said, however, that many leading English and American writers on jurisprudence characterize this theory of law as childish fiction and champion the doctrine that the rules which the judicial organs of the State lay down in deciding cases constitute law. However, according to the great weight of authority the theory that courts make law is unsound. The courts do not make law, but simply declare law. A judicial decision is but evidence of the law. An overruling decision does not change law but impeaches the overruled decision as evidence of law. Adopting the theory that courts merely declare pre-existing law it logically follows that an overruling decision operates retroactively. Courts have generally given retroactive effect to decisions which have overruled earlier precedents.

''Where in reliance on the earlier decision a person has acquired contract or property rights which are valid under the law as then declared by the highest court of the State, or has done some act which according to that law is innocent, the logical outcome of this doctrine would often cause hardship and injustice. When confronted by this situation the great majority of the courts, at the call of justice, have refused to go the whole length of the doctrine and have held that though in general a change in judicial decision had a retrospective effect they would not apply it so as to impair vested rights, such as property rights or those resting on contracts. The United States Supreme Court in *Great Northern R. Co.* v. Sunburst Co. (287 U. S. 358), speaking through Mr. Justice Cardozo, said: ('A State in defining the limits of adherence to precedent

may make a choice for itself between the principle of forward operation and that of relation backward.) It may say that decisions of its highest court, though later overruled, are law none the less for intermediate transactions. Indeed there are cases intimating too broadly (cf. *Tidal Oil Co.* v. *Flanagan,* 263 S. 444), that it must give them that effect; but never has doubt been expressed that it may so treat them if it pleases, whenever injustice or hardship will thereby be averted.' Salmond in his work on Jurisprudence (8th ed. p. 197), in discussing the retrospective effect of a later decision, said: 'The overruling of a precedent is not the abolition of an established rule of law; it is an authoritative denial that the supposed rule of law has ever existed. The precedent is so treated not because it has made bad law, but because it has never in reality made any law at all. It has not conformed to the requirements of legal efficacy. Hence it is that the overruling of a precedent, unlike the repeal of a statute, has retrospective operation. The decision is pronounced to have been bad *ab initio.* A repealed statute, on the 'contrary remains valid and applicable as to matters arising before the date of its repeal. The overruling of a precedent is analogous not to the repeal of a statute, but to the judicial rejection of a custom as unreasonable or as otherwise failing to conform to the requirements of customary law.'

''The effect of overruling a decision and refusing to abide by the precedent there laid down is retrospective and makes the law at the time of the overruled decision as it is declared to be in the last decision, except in so far as the construction last given would impair the obligations of contracts entered into, or injuriously affect vested rights acquired in reliance on the earlier decision. (15 C. J. 960, and cases there cited.)

''The general principle is that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former decision is bad law, but that it never was the law. To this the courts have established the exception that where a constitutional or statute law has received a given construction by the courts of last resort; and contracts have been made and rights acquired under and in accordance with such construction, such contracts may not be invalidated nor vested rights acquired under them impaired by a change of construction made by a subsequent decision.''

A. Cuesta & Co. brought this action in July, 1936. In March, 1938, the essential facts of the complaint were admit-

ted in a stipulation. This was followed in May by a motion in which defendants submitted certain questions of law. The district court rendered its judgment May 25th. The Serrallés case was decided by this court July 28, 1938.

The law declared in the Soto Gras case—if we are to accept the orthodox theory discussed in *People ex rel Rice* v. *Graves, supra*—"had a Platonic or ideal existence before the act of declaration." *Great Northern R. Co.* v. *Sunburst Oil & Ref. Co., supra.* According to that theory—characterized in the Sunburst Oil & Ref. Co. case as an "ancient dogma"— the law declared by this court in *Jesús* vs. *Gallardo,* after the overruling of that case by this court in the Soto Gras case, did not become bad law; "it never was the law." By the same token, however, the doctrine of the Soto Gras case —when overruled in the Serrallés case—likewise did not become bad law, "it never was the law." We shall not stop to speculate as to the exact nature of the net result where as here a court has twice reversed itself or as to what the result might be if this court should again reverse itself and revert to the doctrine of the Soto Gras case. Whether the proviso contained in section 10 of "An Act to authorize suits against the People of Puerto Rico," approved April 13, 1916 (Session Laws, 151) and amended in 1928 (Session Laws, 130) might or might not have some bearing on the question as to a possibility, however remote, of another reversal and reversion, is also a matter which needs not be considered at this time. See, however, *Saurí & Subirá* v. *Sepúlveda,* 25 P.R.R. 224 and *Jiménez* v. *Domenech,* 80 Fed. (2d) 767.

The decision of the court in *Soto Gras* v. *Domenech, supra,* until overruled, was obligatory upon the district and municipal courts; or, at least, would probably have been regarded by those courts as obligatory upon them. See *Sojo* v. *Registrar,* 35 P.R.R. 785 and *Ochoa* v. *Manzano,* 24 P.R.R. 786. If the present action had been commenced in the municipal court, it would probably have been dismissed for want of jurisdiction, either by the municipal court, or on appeal,

by the district court. Barring any question of limitation, we have no reason to believe that the final outcome of the litigation would be different if plaintiff were now required to bring a new action in the municipal court. A reversal of the judgment would result in hardship and injustice to plaintiff without any just advantage to defendant. After such a reversal, it would seem disingenuous to say:

". . . The picture of the bewildered litigant lured into a course of action by the false light of a decision, only to meet ruin when the light is extinguished and the decision overruled, is for the most part a figment of excited brains."

The judgment of the district court will be affirmed.

Mr. Chief Justice Del Toro and Mr. Justice De Jesús took no part in the decision of this case.