Zachary Sorensen and Sarah F. Sorensen, minors, by John F. Kerscher, their guardian ad litem, and Ronald Tempesta and Irene P. Tempesta, their guardians, Plaintiffs-Appellants,

v.

Ronald W. Jarvis, Richard Jarvis and Wisconsin Employers Casualty Company, Defendants,

Franksville Bank of Liquors, Ltd., Defendant-Respondent.
[Case No. 83–1821.]

Scott A. Ferraro, a minor, by C. James Heft, his guardian ad litem, and Karen Ferraro, his mother, Plaintiffs-Appellants,

v.

Ronald W. Jarvis, Richard Jarvis, his father and sponsor, and The Wisconsin Employers Casualty Company, an insurance corporation, Defendants,

Robert M. Tonar, doing business under the name and style of Franksville Bank of Liquors, Ltd., Defendant-Respondent.
[Case No. 83–1834.]

Supreme Court

*Nos. 83–1821, 83–1834. Argued April 25, 1984.— Decided June 28, 1984.*

(Also reported in 350 N.W.2d 108.)

For the plaintiffs-appellants in case no. 83–1821 there were briefs by *John F. Kerscher* and *Constantine, Christensen, Krohn & Kerscher, S.C.*, Racine, and oral arguement by *John F. Kerscher*.

For the plaintiffs-appellants in case no. 83–1834 there were briefs by *C. James Heft* and *Heft, Dye, Heft & Paulson, S.C.*, Racine, *Janet Gill Hernandez* and *T. Chris-*

*topher Kelly,* Madison, of counsel, and oral argument by *C. James Heft.*

For the defendant-respondent there were briefs by *Robert L. Swanson* and *DeMark, Kolbe & Brodek, S.C.,* Racine, and oral argument by *Mr. Swanson.*

Amicus curiae briefs were filed by *Peter A. Peshek, Judy A. Derouin* and *DeWitt, Sundby, Huggett, Schumacher & Morgan, S.C.,* Madison, for the Tavern League of Wisconsin, Inc.; and, *Howard A. Davis, Charles F. Stierman* and *Habush, Habush & Davis, S.C.,* Milwaukee, for Milwaukee County Chapter of Mothers Against Drunk Drivers.

HEFFERNAN, C.J.   These cases are before us on appeal from judgments of the circuit court for Racine county, James Wilbershide, Circuit Judge, dismissing the complaints because they fail to state a claim upon which relief could be granted.[1]

The question here is whether a third party injured by an intoxicated minor has a common law negligence action against a retail seller for the negligent sale of an intoxicating beverage to a person the seller knew or should have known was a minor and whose consumption of the alcohol was a cause of the accident.

Based on a series of cases of this court holding that the cause of an accident involving an intoxicated driver was the consumption of the alcohol by the driver and not the sale or the furnishing of the alcohol to the driver by a vendor, the trial court held that no claim was stated upon which relief could be granted. We reverse and hold that, under facts which may be proved under the pleadings, a

---

[1] The complaints were dismissed on August 8, 1983. The appellants' motions to bypass the court of appeals pursuant to secs. 808.05 and 809.60, Stats., were granted by this court. Because the actions arose out of the same occurrence and posit the same theory of recovery, they have been consolidated.

cause of action for common law negligence against the vendor has been stated.

Two actions have been brought against the liquor dealer, Robert M. Tonar, d/b/a Franksville Bank of Liquors, Ltd. The facts alleged in each complaint are, for the purposes of this appeal, substantially the same and are considered together.

On October 27, 1981, Ronald W. Jarvis, a minor aged seventeen, invited Scott A. Ferraro to go for a ride. Jarvis purchased a bottle of liquor from Tonar at the Franksville Bank of Liquors. Approximately twenty minutes later, Jarvis returned to the store and purchased another bottle of liquor. Sometime later that evening, Ronald Jarvis failed to stop at a stop sign, proceeded through an intersection, and collided with a vehicle driven by James L. Sorensen. Sorensen and his wife, Sarah, were killed, and their two children, Zachary and Sarah, were injured. Ferraro, Jarvis' passenger was also injured. An action was commenced by the minor Sorensens against Jarvis for his negligent and intoxicated driving and against the liquor dealer for negligently selling the liquor to the minor Jarvis, which acts of negligence combined to cause the wrongful deaths of the elder Sorensens and the personal injuries of the children.

An action was also commenced by Ferraro alleging that his injuries were caused by the combined negligence of Jarvis in respect to his intoxicated driving of the car and that his injuries were also caused by the negligence of the liquor dealer in selling liquor to the minor Jarvis, which liquor caused the driver's intoxicated condition.[2]

---

[2] On this appeal the defendants assert for the first time that the complaints are defective, in that they fail to allege—even were it possible to state a claim upon which relief could be granted—facts that allege a chain of causation between the sale of the liquor and the accident, *i.e.*, that the driver drank the liquor, the liquor caused intoxication, and the intoxication was a substantial

In respect to the facts pleaded as set forth above, we accept these facts as being true. The complaint must be liberally construed to do substantial justice and, if reasonably possible, construed to state a cause of action. Moreover, this court will affirm an order of a trial court dismissing a claim for relief only if it appears to a certainty that the plaintiff could not prove any set of facts that would support the claim. As stated in footnote 2, arguably there are lacunae in the allegations of negligence set forth in the complaints, but notice was given by both sets of plaintiffs in respect to the basic facts and the theory on which the claims were predicated. We accepted these cases on bypass, not to determine a routine pleading issue, but to determine whether public policy was better served by concluding that the plaintiffs had a cause of ac-

factor in causing the negligent driving conduct. We conclude that it is apparent from the record that the trial court focused upon plaintiffs' theory of action and concluded recovery was foreclosed under *Garcia v. Hargrove,* 46 Wis. 2d 724, 176 N.W.2d 566 (1970), and *Olsen v. Copeland,* 90 Wis. 2d 483, 280 N.W.2d 178 (1979). Accordingly, the court never had reason to consider whether, assuming a theory under which recovery could be had, facts were sufficiently alleged to state a claim under that theory. Hence, in testing and re-evaluating the theory of both plaintiffs, we assume that, under the notice type of pleading now required in Wisconsin, the plaintiffs will be able to prove the facts in support of their theory at trial. If they cannot prove negligence, or cause in fact, they will obviously fail to recover.

It should be noted also that it was only on this appeal that objection was made to the sufficiency of the pleaded facts. In the trial court, the argument of the defendants was simply that under no facts that could be pleaded could a third person injured by the negligence of an intoxicated driver have a claim against a vendor who negligently sold the intoxicant to the driver. Under *Wirth v. Ehly,* 93 Wis. 2d 433, 287 N.W.2d 140 (1980), the objection to the allegations of the complaint is waived because the objection was not timely.

We address the plaintiffs' theory of action on the assumption that the entire progression of the essential facts of negligence have been pleaded: Duty, breach, cause, and damages.

tion under the facts pleaded against a vendor of liquor or whether public policy would be better served by placing the entire legal blame upon the consumer of the alcohol.

We do not commence our analysis from scratch. The general considerations pertinent to whether or not there is, or should be, a cause of action against a liquor vendor date back to at least the formation of the Wisconsin territory.[3] Consistent with this court's interpretation in *Farmers Mutual Automobile Ins. Co. v. Gast,* 17 Wis. 2d 344, 117 N.W.2d 347 (1962), this court has held either that this area of responsibility was preempted by legislation or that, as a matter of policy, it was a matter of public concern that could best be handled by the legislature.

We conclude that, on the basis of past cases decided by this court, this court is free to determine whether, as a matter of policy, we should recognize a common law cause of action by an injured third person against a vendor of liquor.

We first review the points urged by the defendants to support their premise that this court is barred from considering a change in the present law.

While the defendants have asserted that this court could not change the common law view that only the conduct of the consumer of the liquor constituted a cause of an injury, and not the supplier, that rigid method of interpretation of our constitution has long been repudiated. We specifically stated in *State v. Esser,* 16 Wis. 2d 567, 115 N.W.2d 505 (1962), that the evolution of the common law was a matter of continuing concern to the courts and that we were not to be thrust into a rigid and unchange-

---

[3] Justice George Currie, in the appendix to *Farmers Mutual Automobile Ins. Co. v. Gast,* 17 Wis. 2d 344, 117 N.W.2d 347 (1962), demonstrated that, from at least 1839, civil penalties for selling to a minor were authorized under specific legislative acts, while there were no provisions in the common law for recovery.

able view of the common law by sec. 13, art. XIV, of the Wisconsin Constitution.[4] We said:

"We conclude that the function of sec. 13, art. XIV, Wis. Const., was to provide for the continuity of the common law into the legal system of the state; expressly made subject to legislative change (in as drastic degree within the proper scope of legislative power as the legislature might see fit) but impliedly subject, because of the historical course of the development of the common law, to the process of continuing evolution under the judicial power." *Esser*, 16 Wis. 2d at 584.

This court has also recognized:

" '. . . that the common law is susceptible of growth and adaptation to new circumstances and situations, and that courts have power to declare and effectuate what is the present rule in respect of a given subject without regard to the old rule. . . . The common law is not immutable, but flexible, and upon its own principles adapts itself to varying conditions.' *Dimick v. Schiedt*, 293 U.S. 474, [487 (1935)]," quoted with approval in *Schwanke v. Garlt*, 219 Wis. 367, 371, 263 N.W. 176 (1935).

Thus, as a part of our common law heritage, this court is free to amend the common law. True, as we have frequently stated, the legislature may amend or change our determinations of the common law, but we are not bound to adhere to the holdings of the common law as it existed in 1848.[5]

---

[4] "Common law continued in force. SECTION 13. Such parts of the common law as are now in force in the territory of Wisconsin, not inconsistent with this constitution, shall be and continue part of the law of this state until altered or suspended by the legislature."

[5] *Theama v. City of Kenosha*, 117 Wis. 2d 508, 344 N.W.2d 513 (1984); *State v. Deetz*, 66 Wis. 2d 1, 224 N.W.2d 407 (1974); *Moran v. Quality Aluminum Casting Co.*, 34 Wis. 2d 542, 150 N.W.2d 137 (1967); *Holytz v. Milwaukee*, 17 Wis. 2d 26, 115 N.W. 2d 618 (1962); *Goller v. White*, 20 Wis. 2d 402, 122 N.W.2d 193

A case upon which defendants rely, *Garcia v. Hargrove,* 46 Wis. 2d 724, 176 N.W.2d 566 (1970), makes it clear that this court is not bound to a common-law rule whether or not it existed prior to Wisconsin's reception into the Union. We said:

"The fact a common-law rule was in effect when the Wisconsin Constitution was adopted does not mean this court is 'bound by the common law' and unable to change the law when it no longer meets the economic and social needs of society." 46 Wis. 2d at 731.

The defendant has also asserted that we are not free to change the common law as it now exists, because a recent legislative attempt to do so failed. Defendant asserts that, because Assembly Bill 371, which would have declared there was liability on one who illegally sold, furnished, or gave away intoxicating liquors illegally, was allowed to die in committee, this was tantamount to a declaration of the legislative will not to change the common law. While in the past we have indicated that nonaction by the legislature could be so interpreted (*see, Schwenkhoff v. Farmers Mutual Automobile Ins. Co.,* 11 Wis. 2d 97, 104 N.W.2d 154 (1960)), we have since stated that, even where there has been some evidence, arguably, of the legislature's will by its failure to act, we are not foreclosed from acting.[6]

We have also pointed out that the nonpassage of a bill is not reliable evidence of legislative intent, for it may have failed by reason of insufficient legislative time for consideration and because of bill priorities established by legislative leadership, or the efforts of special interests, or lobbying efforts at a committee or floor level, or nu-

(1963); *Kojis v. Doctors Hospital,* 12 Wis. 2d 367, 107 N.W.2d 131, 107 N.W.2d 292 (1961).

[6] *Peterson v. Roloff,* 57 Wis. 2d 1, 16, 203 N.W.2d 699 (1973) (Chief Justice Hallows dissenting). The Hallows dissent in this respect was quoted with approval by the majority in *Hansen v. A.H. Robins, Inc.,* 113 Wis. 2d 550, 560, 335 N.W.2d 578 (1983).

merous unidentifiable, extraneous factors unrelated to what the majority of the legislature thought about the merits of a bill. Had the bill passed and become the law, there would have been a clearly manifested intention of the legislature, but a failure to pass legislation is so equivocal as to be meaningless. Because the legislature, for a reason that is unknown, has failed to act to impose tort liability upon a person who illegally sells intoxicating beverages does not preclude this court from acting.

This court is not constrained by the constitution nor by any manifestation of the legislative will from imposing liability upon a liquor vendor who illegally sells alcoholic beverages.[7]

The defendant also argues that the legislature preempted the field of tort liability when it enacted in 1934 sec. 176.35, Stats.,[8] which remained in effect in substan-

---

[7] We also point out that illegality in the sense intended in the proposed, but now failed, Assembly Bill 371 may not have been synonymous with the imposition of liability for the negligent sale of an alcoholic beverage to a minor who, then, as the result of consuming the intoxicant, causes injury to another. The defendants are asking that we do the impossible—interpret the meaning or intent of a bill that did not pass. It is difficult enough to determine legislative intent even where there is a complete legislative history, reports of the legislative council, and possible veto messages in the event of partial vetoes, or drafting instructions of the author.

[8] "176.35 **Action for injury by unlawful sale.** Any person who is injured in person, property, or means of support by, or in consequence of, the intoxication of any minor or habitual drunkard shall have a right of action jointly or severally against any person who has been notified or requested in writing, by the officers authorized by law to forbid the sale or giving away of intoxicating liquors to such minor or habitual drunkard, or by the spouse, parents, relatives, guardian or persons having the care or custody of such minor or habitual drunkard, not to sell or give intoxicating liquors to the minor or habitual drunkard, and who, notwithstanding such notice or request, knowingly sells or gives away intoxicating liquors, thereby causing the intoxication of such minor or drunkard; and the person so selling or giving away such liquors

tially the same form until its repeal became effective on July 1, 1982—eight months *after* the accident and injuries in question in the instant case. The defendants therefore assert that the cases of this court which relied upon sec. 176.35 to preempt the field of civil liability control this case.

The defendants rely upon *Farmers Mutual Automobile Ins. Co. v. Gast,* 17 Wis. 2d 344, 117 N.W.2d 347 (1962). There the court was confronted with a situation wherein a minor was served intoxicating liquor by Gast, a tavernkeeper. The minor, because of the effect of the alcohol, lost control of the car, hit a tree, causing injury to a passenger. The court indicated that, because the sale to a minor was prohibited by law, it would ordinarily have no problem finding the tavernkeeper negligent *per se.* The court then went on to say that the legislature, by the enactment of sec. 176.35, Stats., preempted the field of tort damages that were recoverable when the conduct of a tavernkeeper in selling in violation of the law caused the intoxication of the purchaser, resulting in injury to a third person. Thus, the court stated that, in accordance with the legislative intent, only where the notices pursuant to sec. 176.35 had been given in writing instructing a tavernkeeper not to serve a named minor or a named drunkard could there be any liability imposed.

The court, in *Gast,* stated, despite the fact the statute prohibiting sale to a minor constituted, under all usual rules, negligence *per se,* the further enactment of sec. 176.35, Stats., requiring notice to be given not to sell or furnish intoxicating liquor to a minor, was a clear expression of legislative intent and that, absent the giving of the notice, there was to be no liability. The court rec-

---

or drinks shall be liable for all damages resulting therefrom. A married person shall have the same right to bring such suit and to control the same as a single person, and all damages so recovered shall belong to the person bringing the suit."

ognized that this legislative remedy was not coextensive with the wrong declared by the statutes prohibiting giving liquor to a minor. It obviously so held, because it concluded there was no common law tort—that the tort was created only by the criminal statutes prohibiting the sale or furnishing of alcohol to minors—and that the legislature, having created the tort, could limit its civil effect.

Accordingly, the court emphasized that there was no liability independent of the limited liability imposed by sec. 176.35, Stats. The court stated the general rule to be:

". . . that a vendor of intoxicating liquor is not, at common law, answerable to a third person for injury or damage sustained by the latter as a result of the intoxication of the vendee." *Gast,* 17 Wis. 2d at 352.

It is worth noting that the statute which the court claimed preempted the field of liability specifically referred to "[a]ny person who is injured . . . in consequence of . . . the intoxication of any minor" where the seller "notwithstanding such notice" shall "knowingly [sell] or [give] away intoxicating liquors, thereby causing the intoxication of such minor." Thus, the statute itself, though limiting—according to the court—the conditions for the abrogation of the common law rule, specifically labelled the conduct of the person who sold the liquor as a *cause* of the injury to the third person. This was a legislative recognition that the seller, as well as the consumer, of the alcohol was a tortfeasor causing harm to third persons.

This provision of sec. 176.35, Stats., was a legislative comment upon the erroneous basis of the common-law rule. Yet, the court in *Gast* failed to take note of that legislative declaration. The court in *Gast* relied upon *Demge v. Feierstein,* 222 Wis. 199, 268 N.W. 210 (1936), and *Seibel v. Leach,* 233 Wis. 66, 288 N.W. 774 (1939), which stated the general common law rule that it is not

an actionable wrong to either sell or give intoxicating liquors to an able-bodied person. Our court then went on to conclude that the fact of the vendee's lack of majority did not affect the common-law rule.

It failed to remark upon the rationale of the common-law rule as stated in *Seibel v. Leach*, 233 Wis. at 68, and impliedly repudiated in sec. 176.35, Stats.:

> "The common-law rule holds the man who drank the liquor liable, and considers the act of selling it as too remote to be a proximate cause of an injury caused by the negligent act of the purchaser of the drink."

While that undoubtedly states the rule of causation as understood by the common law, sec. 176.35, Stats., expressed the legislative will to be to the contrary—that the act of selling was a cause of the eventual injuries to the third party. Had the emphasis and focus of the *Gast* court been upon the cause portion of sec. 176.35, rather than upon the notice provisions, a different result might have ensued in respect to the claim that the common law was otherwise untouched by legislative action.

The court in *Gast* recognized, however, that it had the power to alter or abrogate the common-law rule even though the legislature had taken upon itself the modification of the rule. Nowhere in *Gast* did this court question its power to change the law. Rather, it stated, "We do not deem this a proper case in which to so do." 17 Wis. 2d at 354. It explained why it did not consider *Gast* an appropriate case, by saying that:

> "Plaintiff [the indemnifying insurance company] stands in the shoes of [the minor driver], the purchaser and consumer of the alcoholic beverage, and not of . . . , the injured person. . . . Under these circumstances we fail to find compelling, equitable considerations in plaintiff's favor which require this court to consider the advisability of abandoning a common-law rule . . . ." 17 Wis. 2d at 354.

The implication is clear that the court may have been willing to change the rule if it had been necessary to compensate an injured third party, but it would not consider the change only to benefit an indemnifying insurance company, which had a contractual duty to reimburse its insured for personal liability.[9]

While *Gast* reiterates the common law rule and recognizes a legislative alteration of the rule (the notice provision) which it states was preemptive in the particular situation, nevertheless, by implication, it stands as an adumbration of the abrogation of the common law rule in a proper case.

*Garcia v. Hargrove, supra,* involved an intoxicated adult, not a minor. While it upheld the common law result that the imbiber and not the supplier of liquor was alone liable, it reached that result on a radically different rationale from that utilized in earlier cases. The majority in *Garcia* repudiated any argument that the court was not free to change the common law, stating:

"The fact a common-law rule was in effect when the Wisconsin Constitution was adopted does not mean this court is 'bound by the common law' and unable to change the law when it no longer meets the economic and social needs of society." 46 Wis. 2d at 731.

It also repudiated the preemption argument of *Gast, supra,* stating:

"Changing the common-law rules of immunity . . . together with abrogation of the privity requirements between manufacturer or user, clearly demonstrates that this court does not interpret legislative consideration coupled with inaction as indicative of preemption." 46 Wis. 2d at 732.

---

[9] In *Garcia v. Hargrove,* 46 Wis. 2d 724, 728, 176 N.W.2d 566 (1970), the court wrote, "The plaintiff suggests that in *Farmers Mut. Automobile Ins. Co. v. Gast* . . . this court indicated a willingness to change [the common law rule]. We do not take issue with this observation."

Although the *Garcia* court referred to sec. 176.35, Stats., which the court found controlling in *Gast*, it stated, "[W]e do not consider the issue of preemption of civil liability to be before us now on this appeal." *Garcia*, 46 Wis. 2d at 736. *Garcia*, then, by its studied ignoring of the *Gast* rationale of preemption—coupled with the language quoted above (at 732)—constitutes a *sub silentio* overruling of the preemption rationale of *Gast*.[10]

Most importantly, the *Garcia* majority specifically repudiated the theory implicit in the common law that proximate cause meant immediate cause. The *Garcia* court stated the basis of the common-law rule:

" 'This rule is based on the theory that the proximate cause of the injury is the act of the purchaser in drinking the liquor and not the act of the vendor in selling it . . . .' " 46 Wis. 2d at 727, quoting 48 C.J.S., *Intoxicating Liquors*, sec. 430, p. 716.

The *Garcia* majority then proceeded to explode this rationale, pointing out that:

"[T]his court [has] removed the element of foreseeability from causation and grounded that element of negligence entirely upon the act complained of being a substantial factor in causing the harm." 46 Wis. 2d at 730.

---

[10] It is apparent that the court's complete substitution of new grounds for rationalizing the retention of the rule that only the intoxicated driver, not the seller, incurs liability was a recognition of the fact that the original justification for the rule no longer had a defensible foundation. This constituted a *sub silentio* overruling of *Demge v. Feierstein*, 222 Wis. 199, 268 N.W. 210 (1936); *Seibel v. Leach*, 233 Wis. 66, 288 N.W. 774 (1939), and *Farmers Mutual Automobile Ins. Co. v. Gast*, 17 Wis. 2d 344, 117 N.W.2d 347 (1962). We now expressly overrule these cases in respect to the proposition that only the intoxicated person can be liable and that the act of selling is too "remote to be a proximate cause of an injury." *Seibel*, 233 Wis. at 68. *See*, headnote No. 2, *Seibel*, *supra*, 233 Wis. at 66; headnote No. 2, *Demge*, *supra*, 222 Wis. at 199; and headnote No. 6, *Gast*, *supra*, 17 Wis. 2d at 345.

The court concluded that the common law cases that are predicated upon the outmoded concept of proximate cause are no longer persuasive.[11] It said:

"Thus, although cases still follow the rule of nonliability, they are of little persuasion in this state when predicated on the 'proximate cause' of plaintiff's injuries being the consumption and not the sale of intoxicants." 46 Wis. 2d at 731.[12]

The *Garcia* court thus overruled the entire prior basis for the common-law rule that the driver, not the supplier of the drink, was liable. It substituted its own common law holding. Thus, the common law, at least as it came to Wisconsin prior to statehood, was totally repudiated by this court in 1970. The court stated its own rule:

"The controlling consideration is one of public policy, and . . . reasons of public policy dictate liability not be extended as proposed by plaintiff." 46 Wis. 2d at 732–33.

The majority of the justices found that public policy considerations mandated a new rationale for the repudiated foundation of the rule excluding the furnisher of li-

---

[11] For an exposition of this court's view of the cause element of a negligence action, *see, Osborne v. Montgomery,* 203 Wis. 223, 234 N.W. 372 (1931); *Pfeifer v. Standard Gateway Theater, Inc.,* 262 Wis. 229, 55 N.W.2d 29 (1952); *A.E. Investment Corp. v. Link Builders, Inc.,* 62 Wis. 2d 479, 214 N.W.2d 764 (1974); Campbell, *Work of the [Wisconsin] Supreme Court,* 1941 Wisconsin Law Rev. 110.

[12] *See, Pfeifer v. Gateway Theater, Inc.,* 262 Wis. 229, 55 N.W. 2d 29 (1952), which made clear that negligence is not dependent upon foreseeing that a particular harm will, or could, result to a particular person. An act is negligent if a reasonable person could foresee harm to someone. Whether there is liability is dependent upon causation: Cause in fact, referred to as substantial factor, and proximate cause. Proximate cause embraces not cause in fact but policy factors, *i.e.,* whether, despite the negligent act, which in fact caused a harm, liability should not be imposed because of some policy reason.

quor from liability. The public policy bases enunciated were: (1) That the problem of intoxication was a social, not a legal, problem and, hence, was a matter to be dealt with by the legislature; (2) that to hold a purveyor of spirits liable would be to impose liability upon a liquor industry that was declared to be legitimate and respectable; (3) that the chain between breach of duty and the injury will rarely be clear and, thus, "hard" cases would be the rule; (4) that, once a negligence basis for liability is accepted, there could be no logical point to cut off risk of responsibility, *i.e.*, if a negligent vendor for profit is liable, why not a negligent social host; (5) that this new rule of liability would create additional burdens on the courts; and (6) that allowing a vendor to be liable would erode the responsibility heretofore placed upon the drinker and would thus diminish a sense of responsibility for one's own conduct.

Using almost the exact words of *Gast, supra,* 17 Wis. 2d at 354, the *Garcia* court stated:

"We fail to find compelling equitable considerations in plaintiff's favor which require this court to abandon a rule of longstanding both in this state and in many others." 46 Wis. 2d at 736–37.

The dissent of Chief Justice Hallows, joined in by Justices Wilkie and Heffernan, applauded the majority's recognition of the fact that the selling of liquor to "a drunk" is negligence and a substantial factor contributing to a foreseeable injury to a third person, and points out that this repudiates the common law rationale of *Seibel v. Leach, supra.*

The dissent parts company with the majority on its perception of public policy considerations. The dissent pointed out: (1) That recognizing the liability of a supplier of liquor is not the singling out of a particular business for special sanctions, but rather that the majority

opinion immunizes a single segment of society—the liquor industry—from liability for negligence to which persons in general are subject; (2) that the chain of causation between the furnishing of the liquor, driving a vehicle while intoxicated, and the injuries presents not a hard case but a routine cause question; (3) that the necessity of drawing a line between a commercial vendor and a social host is a "strawman" argument, because "social justice" and "common sense" require that a social host not give an intoxicated guest more liquor; and (4) that a drunk driver will not be relieved of his responsibility—he will remain liable—but that responsibility will be shared with at least one additional culpable party, the negligent tortfeasor who supplied the liquor, when the negligence of each is a substantial factor in causing the plaintiff's injuries. The dissent also points out that the acceptance of the majority's argument that imposition of liability on a vendor would create an onerous burden on the courts, if carried to its logical conclusion, would bring to a standstill the important and necessary work of the court in keeping the common law modern and vital.

*Garcia v. Hargrove,* 52 Wis. 2d 289, 190 N.W.2d 181 (1971) *(Garcia II),* added nothing to the law. The plaintiff's theory of liability in the repleaded action was based exclusively upon statutes prohibiting the sale of liquor to an intoxicated person, but as the author, Justice Wilkie, a dissenter in *Garcia I,* pointed out, the public policy considerations of *Garcia I,* still adhered to by the majority of the court, mandated a denial of liability.

Essentially the same problem—the liability of a seller of liquor to an intoxicated patron who later drove a vehicle and caused harm—presented itself to this court in *Olsen v. Copeland,* 90 Wis. 2d 483, 280 N.W.2d 178 (1979).

The *Olsen* majority substantially reiterated the policy considerations for holding no liability on the vendor that

were stated in *Garcia I. Olsen* is a reiteration of the status quo, except that it recognizes no need for the re-justification found in *Garcia I.* It fully accepted the fact that the question of preemption, the right of the court to change the common law, and the proximate cause argument were irrelevant, and that the question was wholly one of public policy.

The majority then went on to speculate about possible fact situations which would present difficult problems for the court and the factfinder. Again, the majority emphasized that the complexity of the drinking problem implicated social behavior that the legislature could better deal with. The majority also concluded that the availability of insurance to liquor vendors must be considered, and that any change that would impose liability should be wholly prospective, and that could best be accomplished by the legislature.

The arguments of the three dissenters in *Olsen*, like those of the majority, are essentially a restatement, with some change of emphasis, of the respective positions taken in *Garcia I.*

Justice Day, dissenting separately in *Olsen,* stated succinctly the theory of negligence upon which a vendor of liquor should be held liable:

"[T]he vendor in this case was guilty of a negligent act if he sold intoxicating beverages to a person who he knew or should have known was intoxicated and who he knew or should have known would be driving in an intoxicated condition. If such negligence was a substantial factor in causing harm to a third person; the commercial vendor here should be liable with the intoxicated person under the comparative negligence rule." 90 Wis. 2d 497.

We accept the formulation of Justice Day, modifying it, however, to be applicable to the incident here, where the purchaser was a minor:

"The vendor in this case was guilty of a negligent act if he sold intoxicating beverages to a person who he knew or should have known was a minor. If such negligence was a substantial factor in causing harm to a third person, the commercial vendor should be liable with the minor driver under the comparative negligence rule."

It is implicit in this rule that the sale to the minor must be negligent. The sale to a minor under the formulation of *Gast* is negligence *per se*. We hold, however, the vendor has all the defenses that would be available under the criminal statutes.[13] Additionally, the sale of the liquor must have been a cause of the eventual injury to a third party. There must be proof of the consumption of the alcoholic beverage by the minor driver, proof that he was intoxicated or his driving ability was impaired by the consumption of alcohol, and that such impairment caused by the consumption of the alcohol was a cause of the accident. Thus, a jury would be instructed, if it is to impose liability upon the vendor, that it must find that the sale of the alcoholic beverage was a substantial factor in causing the injuries to a third party.

Because the present case is only at the pleading stage, and it is to be assumed that the facts necessary to state a claim can be proved, we are not now concerned with

[13] Sec. 125.07(6), Stats.:

"(6) DEFENSE OF SELLERS. Proof of the following facts by a seller of alcohol beverages to a person under the age of 18 years is a defense to any prosecution for a violation of this section.

"(a) That the purchaser falsely represented in writing and supported with other documentary proof that he or she was 18 years of age or over.

"(b) That the appearance of the purchaser was such that an ordinary and prudent person would believe the purchaser to be 18 years of age or over.

"(c) That the sale was made in good faith and in reliance on the written representation and appearance of the purchaser in the belief that the purchaser was 18 years of age or over."

whether sufficient proof will be produced at trial. Under our notice pleading rules, the defendants, as is clear from the motions to dismiss and the briefs filed, are fully cognizant of the nature of the claim. Under the law which we herein adopt, a claim against the vendor has been stated upon which relief can be granted.

We need not reiterate the rationale for holding that the common-law rule of nonliability in this situation should be wholly abrogated. The rationale has been admirably stated in the dissent of Chief Justice Hallows in *Garcia I*, 46 Wis. 2d at 737. The dissent of Justice Heffernan, which Justice Abrahamson joined, in *Olsen v. Copeland*, 90 Wis. 2d 483, 494, 280 N.W.2d 178 (1979), cited that earlier dissent of Chief Justice Hallows. The separate dissent of Justice Day stated additional reasons for liability based upon accepted negligence law. We need not restate those dissents here. They have been capsulized in this opinion, *supra*, and we adopt them as the *ratio decidendi* of this opinion.

Accordingly, we hold that, where there is sufficient proof at trial, a vendor who negligently supplies intoxicating beverages to a minor and the intoxicants so furnished cause the minor to be intoxicated or cause the minor's driving ability to be impaired shall be liable to third persons in the proportion that the negligence in selling the beverage was a substantial factor in causing the accident or injuries as determined under the rules of comparative negligence.[14]

---

[14] As of the mandate date of this opinion, the date of majority and the legal drinking age are eighteen years of age. Effective July 1, 1984, the legal drinking age is nineteen years of age. 1983 Wisconsin Act 74, Sec. 5, West's Wisconsin Legislative Service, 1983–85 Biennial Session, p. 842. Reference throughout this opinion to the word, "minor," is synonymous with the phrase, "under the legal drinking age." Our holding abrogates the common law immunity afforded vendors for the sale of intoxicants to persons under the legal drinking age, whatever the legal drinking age may be at the time.

At oral argument, attorneys for the defendant, although steadfast in their assertion that a vendor ought not be liable in an action as pleaded in the instant case, asked that, were we to change the common-law rule, the change be wholly prospective, *i.e.*, that the new rule of liability not apply to the case before us and should only apply to acts of negligence that occurred after a future date to be determined by the court. The principal reason asserted by the defendants was that a lead time should be afforded sellers of intoxicating beverages during which they could secure insurance to protect against the possible liability.

We are not completely persuaded that the imposition of liability for negligent acts such as are alleged here should come as a surprise. The clear trend in the United States has been to impose liability upon a seller in derogation of the common law rule of immunity.[15] Moreover, selling to a minor was not an act which a seller could expect to perform with impunity. It is forbidden conduct punishable with criminal sanctions. Sec. 125.07, Stats. Even the statute relied upon in *Gast* for preemption purposes recognized the causal relationship between the sale of liquor and the eventual injury. Nevertheless, this court, over a period of at least forty-five years, has resisted efforts to explicitly change the common law rule. Accordingly, some counsel might have reasonably advised clients that a change in the common law rule was unlikely.

In respect to retroactivity of a new rule of law, the United States Supreme Court delineated the following as appropriate in making a determination where civil liability is imposed:

"First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, see, *e.g.*, *Hanover Shoe v. United Shoe Machinery Corp.* [392 U.S. 481, at 496], or by deciding an issue of first

---

[15] See Appendix.

impression whose resolution was not clearly foreshadowed, see, *e.g.*, *Allen v. State Board of Elections*, [393 U.S. 544, at 572]. Second, it has been stressed that 'we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' *Linkletter v. Walker*, [381 U.S. 618, at 629]. Finally, we have weighed the inequity imposed by retroactive application, for '[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice or hardship" by a holding of nonretroactivity.' *Cipriano v. City of Houma*, [395 U.S. 701, at 706]." *Chevron Oil Co. v. Huson*, 404 U.S. 97, at 106–07.

We adopted these considerations as being appropriate in *Kurtz v. City of Waukesha*, 91 Wis. 2d 103, 109, 280 N.W.2d 757 (1979).

Applying these factors, we conclude that the rule of liability adopted herein, specifically overruling *Garcia I* and *II* and *Olsen v. Copeland*, which perpetuated the common-law rule of nonliability, should be prospective. By this, we mean that, with the exception of the claims at issue here, there shall be liability only for the acts of negligence of a vendor selling to a minor on or after September 1, 1984.

We apply the rule of liability adopted herein to the parties in the cases before us. The judgments dismissing the complaints of the plaintiffs herein are reversed, and the causes are remanded to the circuit court for Racine county for further proceedings.

*By the Court.*—Judgments reversed and causes remanded.

### APPENDIX

The following jurisdictions have abrogated the common-law rule of nonliability for a liquor vendor and rec-

ognize the imposition of liability on a tavern owner for injuries sustained by third persons as a result of the acts of an intoxicated patron:

Arizona: *Ontiveros v. Borak,* 136 Ariz. 500, 667 P.2d 200 (1983).
Alaska: *Nazareno v. Urie,* 638 P.2d 671 (Alaska 1981).
Colorado: *Kerby v. The Flamingo Club, Inc.,* 35 Colo. App. 127, 532 P.2d 975 (1974).
Florida: *Davis v. Shiappacossee,* 155 So. 2d 365 (Fla. 1963).
Hawaii: *Ono v. Applegate,* 62 Hawaii 131, 612 P.2d 533 (1980).
Idaho: *Alegria v. Payonk,* 101 Idaho 617, 619 P.2d 135 (1980).
Indiana: *Elder v. Fisher,* 247 Ind. 598, 217 N.E.2d 847 (1966).
Iowa: *Lewis v. State,* 256 N.W.2d 181 (Iowa 1977).
Kentucky: *Pike v. George,* 434 S.W.2d 626 (Ky. 1968).
Massachusetts: *Adamian v. Three Sons, Inc.,* 353 Mass. 498, 233 N.E.2d 18 (1968).
Michigan: *Thaut v. Finley,* 50 Mich. App. 611, 213 N.W. 2d 820 (1973).
Minnesota: *Trail v. Christian,* 298 Minn. 101, 213 N.W.2d 618 (1973).
Mississippi: *Munford, Inc. v. Peterson,* 368 So. 2d 213 (Miss. 1979).
New Hampshire: *Ramsey v. Anctil,* 106 N.H. 375, 211 A. 2d 900 (1965).
New Jersey: *Rappaport v. Nichols,* 31 N.J. 188, 156 A.2d 1 (1959).
New Mexico: *Lopez v. Maez,* 98 N.M. 625, 651 P.2d 1269 (1982).
New York: *Berkeley v. Park,* 47 Misc. 2d 381, 262 N.Y.S. 2d 290 (1965).
Ohio: *Mason v. Roberts,* 33 Ohio St. 2d 29, 294 N.E.2d 884 (1973).
Oregon: *Campbell v. Carpenter,* 279 Or. 237, 566 P.2d 893 (1977).
Pennsylvania: *Jardine v. Upper Darby Lounge No. 1973,* 413 Pa. 626, 198 A.2d 550 (1964).
South Dakota: *Walz v. City of Hudson,* 327 N.W.2d 120 (S.D. 1982).

Tennessee: *Mitchell v. Ketner,* 54 Tenn. App 656, 393 S.W.2d 755 (1964).

Washington: *Callan v. O'Neil,* 20 Wash. App. 32, 578 P. 2d 890 (1978).

Wyoming: *McClellan v. Tottenhoff,* 666 P.2d 408 (Wyo. 1983).

The following jurisdictions adhere to the common-law rule of nonliability of tavern owners and have deferred to the legislature:

Arkansas: *Carr v. Turner,* 238 Ark. 889, 385 S.W.2d 656 (1965).

Connecticut: *Nelson v. Steffens,* 170 Conn. 356, 365 A.2d 1174 (1976).

Delaware: *Wright v. Moffitt,* 437 A.2d 554 (Del. Sup. 1981).

Georgia: *Keaton v. Kroger Co.,* 143 Ga. App. 23, 237 S.E. 2d 443 (1977).

Maryland: *Felder v. Butler,* 292 Md. 174, 438 A.2d 494 (1981).

Montana: *Runge v. Watts,* 180 Mont. 91, 589 P.2d 145 (1979).

Nebraska: *Holmes v. Circo,* 196 Neb. 496, 244 N.W.2d 65 (1976).

Nevada: *Hamm v. Carson City Nugget, Inc.,* 85 Nev. 99, 450 P.2d 358 (1969).