FITZGERALD, Appellant, v. MEISSNER & HICKS, INC., and others, Respondents.

*March 1—April 9, 1968.*

For the appellant there was a brief by *Goldberg, Previant & Uelmen* of Milwaukee, and oral argument by *Albert J. Goldberg.*

For the respondent Meissner & Hicks, Inc., there was a brief by *Prosser, Zimmermann, Wiedabach, Koppa & Lane* of Milwaukee, and *James W. Lane* of counsel.

For the respondent Towne Manufacturing Company there was a brief by *Merten, Connell & Sisolak* of Milwaukee, attorneys, and *James G. Sisolak* of counsel, and oral argument by *James G. Sisolak.*

For the respondent Woerfel Corporation there was a brief by *Kluwin, Dunphy, Hankin & Hayes* of Milwaukee, and oral argument by *John A. Kluwin.*

BEILFUSS, J. The issues presented on this appeal are:

1. Does the rule of law recognizing a wife's right to maintain a cause of action for loss of consortium as set

forth in *Moran v. Quality Aluminum Casting Co., supra,* have prospective or retrospective application?

2. Must a wife claiming loss of consortium, because of an injury to her husband, join her cause of action with an action by her husband for his personal injuries?

The general rule adhered to by this court is the "Blackstonian Doctrine." [1] This doctrine provides that a decision which overrules or repudiates an earlier decision is retrospective in operation.

There are, however, exceptions to this rule which have long been recognized by this court:

"While there would seem to be no middle ground in logic, between a complete adherence to or a complete repudiation of the Blackstonian doctrine, the courts nevertheless have established certain exceptions to it for the purpose of mitigating hardships created by its literal application. Without attempting to deal exhaustively with the subject, it may be said that, generally speaking, courts adhering to the rule that a later decision operates retrospectively, have created the following exceptions: (1) Where contracts have been entered into in reliance upon a legislative enactment as construed by the earlier decisions. (2) Where a legislative enactment has been declared valid by earlier decisions, and contracts have been entered into in reliance upon the statute and decisions. [Cases cited.] (3) Where a criminal statute, which has received a limited construction by earlier decisions, has been so expanded in meaning by the later overruling decision as to make acts criminal which were not such under the earlier decisions, and the later decision is sought to be applied to one whose acts were committed before the statute was given the enlarged construction." *Laabs v. Tax Comm.* (1935), 218 Wis. 414, 417, 418, 261 N. W. 404. *See also Nickoll v. Racine Cloak & Suit Co.* (1927), 194 Wis. 298, 216 N. W. 502; *Estate of Bray* (1950), 257 Wis. 507, 44 N. W. 2d

---

[1] See note 85 A. L. R. 262; *People v. Graves* (1934), 242 App. Div. 128, 273 N. Y. Supp. 582; 37 Harvard L. Rev. 408; 18 Columbia L. Rev. 230; 4 Fordham L. Rev. 128; *Laabs v. Tax Comm.* (1935), 218 Wis. 414, 261 N. W. 404.

245, 45 N. W. 2d 72; *Libby, McNeill & Libby v. Dept. of Taxation* (1952), 260 Wis. 551, 51 N. W. 2d 796.

Generally, throughout the various American jurisdictions, other exceptions to the Blackstonian doctrine have been utilized. Retroactive operation has been sometimes denied where there has been great reliance on an overruled decision by a substantial number of persons and considerable harm or detriment could result to them. It has also been denied where the purpose of the new ruling cannot be served by retroactivity, and where retroactivity would tend to thrust an excessive burden on the administration of justice. 10 A. L. R. 3d 1384.[2]

In this jurisdiction the "reliance" and "administration of justice" considerations have been recognized. In relatively recent years the court has applied exceptions to the Blackstonian doctrine in the tort area of the law where it has determined a compelling judicial reason exists. The reliance factor has been a most prominent consideration in the prospective only abrogation of the various tort immunities.[3] *Kojis v. Doctors Hospital* (1961), 12 Wis. 2d 367, 107 N. W. 2d 131, 107 N. W. 2d 292 (charitable immunity); *Holytz v. Milwaukee* (1962), 17 Wis. 2d 26, 115 N. W. 2d 618 (governmental immunity); *Widell v. Holy Trinity Catholic Church* (1963), 19 Wis. 2d 648, 121 N. W. 2d 249 (religious immunity).

Recently in *Dupuis v. General Casualty Co.* (1967), 36 Wis. 2d 42, 45, 152 N. W. 2d 884, the court emphasized the importance of the reliance factor in its decisions to limit application of the foregoing list of cases:

"Inherent in a court declaring that a decision should apply prospectively only is a determination that a compelling judicial reason exists for doing so. In many of the

---

[2] See 10 A. L. R. 3d 1362–1447 for a comprehensive examination of the subject of the application of overruling decisions.

[3] The decisions cited were limited to prospective application with the exception that it was determined they would apply to the parties involved in the actual case.

cases previously decided which apply this principle, one of the important compelling judicial reasons which has been considered is what has been referred to as the reliance factor, *i.e.*, that the parties involved had relied upon the immunity doctrine and that to make a decision effective retroactive would manifestly adversely affect great numbers of individuals and institutions that had correctly relied upon their expressed immunity in the conduct of their affairs."

Obviously the court was not suggesting a great number of individuals and institutions had committed torts relying upon the immunity. The reason for the prospective application of these decisions, as mentioned in *Kojis,* was because the court was concerned about the failure of those affected to purchase insurance coverage in reliance upon the immunity.

The possibility of imposing an excessive burden on the administration of justice was a compelling judicial reason for the limitation placed on the retrospective application of this court's decision in *Bielski v. Schulze* (1962), 16 Wis. 2d 1, 114 N. W. 2d 105, which changed our contribution rule and discarded the concept of gross negligence. This is best described by former Mr. Justice THOMAS E. FAIRCHILD in his article in 46 Marquette L. Rev. 1, 15:

"In *Bielski* the court limited the restrospective application of the change in law with respect to contribution and gross negligence. Here again were elements of law which are ordinarily not relied upon by people who are about to engage in tortious conduct. Yet the court was mindful of the fact that if full retrospective application were given, burdens of further litigation would probably be imposed on litigants and the public in cases where claims had been substantially disposed of by litigation or settlement. Such burdens would seem to be wasteful."

The compelling judicial reason for the prospective limitation placed on this court's decision abrogating the doctrine of parental immunity, *Goller v. White* (1963),

20 Wis. 2d 402, 122 N. W. 2d 193, contained consideration both for the reliance placed on the doctrine and for the effect retroactive operation would have on the administration of justice. Our statute controlling limitations of actions of minors (sec. 893.33) provides that a child has until one year after he attains majority to bring suit for injuries sustained during his minority. Conceivably, retroactive application of *Goller* could have resulted in suits for injuries sustained by minors for a period of more than twenty years previous to that decision. There was not only concern over the possibility of overburdening the courts with litigation, but also concern for those who in reliance on the immunity doctrine failed to preserve essential evidence. *Dupuis v. General Casualty Co., supra.*

In the case at bar none of the considerations presented by the foregoing are present to any significant degree. Obviously the contract and criminal considerations are not present. The degree of reliance a tort-feasor might have placed on a wife's inability to recover consortium damages would be insignificant if existent. Certainly the tort was not committed with this in mind and the degree to which it may have influenced the decision whether or not to purchase liability insurance would be less than minimal. Nor will it affect the monetary limits of liability of the insurance carrier.

The respondents vigorously contend the reliance factor is present because insurance companies have relied on this court's position prior to *Moran* in the calculation of their insurance rates. The degree to which the premiums charged by insurance companies would have differed had a wife always been accorded the right to recover consortium damages is speculative and probably relatively insignificant. In any event, it is not of such proportion to be recognized as a compelling judicial reason.

Mr. Justice FAIRCHILD'S statement setting forth the reasons for this court's retroactive application of its de-

cisions abolishing the defense of assumption of risk [4] is apropos:

"In *McConville* and *Colson,* abrogating the defense of assumption of risk, the court did not limit the application of the change in law. The existence of the defense becomes important to most people only in retrospect. A prospective host probably does not consciously rely upon it, either in offering an automobile ride to his guest or deciding whether or not to carry liability insurance. The degree to which the existence of the defense might affect the premiums charged by insurance companies is not clear. Nor is it clear that a farmer would rely on the doctrine in deciding against insurance. In any event, the concurring opinions in *Baird v. Cornelius,* decided one year before *McConville,* had very clearly signalled the probability that the defense was likely to be abrogated." 46 Marquette L. Rev. 1, 15.

The retroactive operation of *Moran* will not unduly burden the administration of justice. With our three-year statute of limitation on such actions (sec. 893.205), retroactive application, considered at this point in time, will only affect those actions arising a little more than two years prior to *Moran.*

Finally, in consideration of the issue it should be noted that the actual monetary amount involved will probably not be substantial. The largest item in loss of consortium damages, no doubt, is the support item. The inability to maintain a wife's support has always been an item for which the husband has been allowed to recover. Consequently, the only items *Moran* makes recoverable that were not recoverable before are loss of society, affection, and sexual companionship. [5]

Although several of the cases referred to above provide for prospective application for the reasons stated therein, we adhere to the concept that a decision that

[4] *McConville v. State Farm Mut. Automobile Ins. Co.* (1962), 15 Wis. 2d 374, 113 N. W. 2d 14; *Colson v. Rule* (1962), 15 Wis. 2d 387, 113 N. W. 2d 21.

[5] *See Moran, supra,* page 557.

overrules or changes a rule of law is to be applied retrospectively unless it is established there are compelling judicial reasons for not doing so. No sufficient compelling judicial reasons are apparent nor established to warrant an exception to the rule of retrospective application of the *Moran* decision, which recognizes the right of a wife to assert a claim for loss of consortium. *Moran* is, therefore, to be applied retrospectively.

In *Moran* the court was concerned with the possibility of double recovery for loss of support in consortium damages. Consequently, as a condition to permitting a wife the right to maintain an action for loss of consortium against a negligent tort-feasor, *Moran* imposed the requirement that her cause of action be joined with that of her husband for his injuries. *See Moran, supra,* page 558.

The respondents contend that the appellant has not met the joinder condition of *Moran* and for that reason the demurrer should be sustained. The further contention was made, at oral argument, that the wife's claim for loss of consortium is derivative and dependent upon the husband's claim and for this reason it must be joined.

The complaint challenged by demurrer in this action is brought by the appellant wife individually and makes claim only for her loss of consortium. In our review of this case we are limited to the record which does not reveal whether or not the husband has commenced a separate cause of action for his injuries, nor if he has, how far it has progressed.

The court's basic concern in *Moran* was that there should not be a double recovery for the husband's loss of services to his wife. The procedural devices resorted to accomplishing this end are secondary.

If the husband has, in fact, commenced a separate action for his injuries and it has not reached the trial stage the actions can be consolidated. If he has not commenced an action and is desirous of doing so, the complaint may be amended and he may join as a party

plaintiff to state his cause of action. (In this instance it appears that the statute of limitations would be a defense to his claim at this date.)

If, in fact, the husband has commenced an action for his injuries and pursued it beyond the trial stage, the wife may still assert her claim for loss of consortium but it must be limited to the items other than the loss of her husband's services. This result can be accomplished by a well prepared verdict question and appropriate instructions.

In the event the husband has not commenced an action the wife should be allowed to pursue her cause of action individually and assert all of the elements of loss of consortium. The elements of loss of society, affection, and sexual companionship are personal to her and quite apart from a similar claim of the husband. If the wife separately recovers for loss of consortium, including a loss of the services of her husband, he then would be barred from a recovery of this same item in his independent subsequent action.

It is, of course, preferable that the claims of both husband and wife for loss of consortium be joined for the purpose of trial so that the same finder of fact passes on both claims to avoid any duplication. However, if this cannot be done because of procedural obstacles or the inability or unwillingness of the husband to assert his claim, the wife should not be prevented from pursuing her own independent cause of action.

The wife's claim to a loss of consortium is derivative in the sense that it does not arise, in this type of action, unless the husband has sustained a personal injury. However, her claim is not for his personal injuries but for the separate and independent loss she sustained. Consistent with her statutory right to assert her claim as set forth in *Moran,* she should be able to pursue it individually if necessary.

Our statement in *Moran* to the effect "that a wife may maintain an action for loss of consortium of her husband

against a negligent tort-feasor provided, and on condition, that her cause of action is combined with that of her husband for his personal injuries" is modified to accommodate the hypothetical situations set forth in this opinion.

*By the Court.*—Judgment reversed, and remanded for further proceedings.