William HARMANN, Jr., a minor, by his guardian ad litem, Thomas W. Bertz, William Harmann, Sr. and Linda C. Harmann, Plaintiffs-Appellants-Petitioners,

v.

Cherie HADLEY, The Continental Insurance Co., John Hildebrandt and Home Mutual Insurance Company, Defendants-Respondents,

Neil SCHULKE, Bernard H. Schulke, Milwaukee Mutual Insurance Company, County of Waupaca, Town of Farmington, Town of Dayton and General Casualty Insurance Company, Defendants.†

Supreme Court

*No. 84–167. Argued January 7, 1986.—Decided March 5, 1986.*

(Also reported in 382 N.W.2d 673.)

† Motion for reconsideration denied April 25, 1986, with costs.

For the plaintiffs-appellants-petitioners there were briefs by *Thomas W. Bertz, Russell T. Golla* and *Anderson, Fisher, Shannon, O'Brien & Rice,* Stevens Point, and oral argument by *Mr. Bertz.*

For the defendants-respondents there was a combined brief by *Nancy Rice Gruber* and *Otjen & Van Ert, S.C.,* Milwaukee; and, *Michael Siddall* and *Herrling, Clark, Hartzheim & Sidall,* Appleton, and oral argument by *Ms. Gruber* and *Michael Siddall.*

SHIRLEY S. ABRAHAMSON, J.   This is a review of an unpublished decision of the court of appeals filed May 29, 1985, summarily affirming the judgment of the circuit court of Portage county, Robert C. Jenkins, circuit court judge, dismissing the amended complaint for failure to state a claim upon which relief can be granted. We reverse the decision of the court of appeals and the judgment of the circuit court and remand the cause to the circuit court for further proceedings.

The amended complaint sets forth a common law cause of action for negligence against two 18-year-olds (adults under Wisconsin Law) who furnished alcoholic beverages to a 17-year-old driver whose consumption of the beverages was a cause of plaintiff's injury. Relying on *Olsen v. Copeland,* 90 Wis. 2d 483, 280 N.W.2d 178 (1979), which adhered to the common law doctrine that the consumption of alcoholic beverages and not

the negligent furnishing of them is the cause of the injury, the circuit court entered a judgment dismissing the complaint. The plaintiffs filed a petition to bypass the court of appeals which this court denied. They then pursued their claims in the court of appeals. While this case was pending from April 10, 1984, to May 29, 1985, this court overruled *Olsen* in *Sorensen v. Jarvis,* 119 Wis. 2d 627, 644–45, 350 N.W.2d 108 (1984), and abrogated the common law immunity afforded commercial vendors who sell intoxicating beverages to persons under the legal drinking age. Furthermore, on April 30, 1985, this court announced its decision in *Koback v. Crook,* 123 Wis. 2d 259, 276, 366 N.W.2d 857 (1985), holding social hosts liable for personal injury caused by the conduct of a minor driver to whom social hosts negligently furnish intoxicating beverages. The court set forth the law in *Koback* as follows:

"We hold that, where there is sufficient proof at trial, a social host who negligently serves or furnishes intoxicating beverages to a minor guest, and the intoxicants so furnished cause the minor to be intoxicated or cause the minor's driving ability to be impaired, shall be liable to third persons in the proportion that the negligence in furnishing the beverage to the minor was a substantial factor in causing the accident or injuries. . . ." *Koback, supra* 123 Wis. 2d at 276.[1]

The court declared in *Koback* that it would apply its holding prospectively, explaining, "By this, we mean that there shall be liability only for the negligent conduct of a social host who furnishes liquor to a minor

---

[1] The legislature recently adopted a statute regarding civil liability for furnishing intoxicating beverages to underage persons. See 1985 Wisconsin Act 47, adopted November 11, 1985, creating sec. 125.035, Stats.

when the conduct which causes injury occurs on or after September 1, 1985." *Koback, supra* 123 Wis. 2d at 277.

On May 29, 1985, one month after this court announced its decision in *Koback,* the court of appeals affirmed the judgment of the circuit court in *Harmann.* Because the alleged negligent conduct had occurred on June 25, 1982, the court of appeals concluded that the *Koback* rule of prospectivity mandated the dismissal of the amended complaint.

The issue presented on review in this court is whether the *Koback* rule of prospectivity bars the plaintiffs' claim. The plaintiffs argue that it does not because this case is factually distinguishable from *Koback.* In *Koback,* social hosts supplied the intoxicant; in this case, friends and peers of the minor driver furnished the intoxicant. In the alternative the plaintiffs assert that the procedural history (the timing of the filing of documents) of the case mandates that this case be treated as an exception to the *Koback* rule of prospectivity.

We hold that this case is not factually distinguishable from *Koback.* We further hold that the procedural history of the case warrants our treating it as an exception to the *Koback* rule of prospectivity. We therefore reverse the decision of the court of appeals and the judgment of the circuit court and remand the cause to the circuit court for further proceedings.

According to the facts alleged in the complaint, which for the purpose of deciding a motion to dismiss are taken as admitted, *Evans v. Cameron,* 121 Wis. 2d 421, 426, 360 N.W.2d 25 (1985), on June 25, 1982, William Harmann, Jr., was rendered a quadriplegic when the car in which he was a passenger went off the road

and turned over in a field. The driver of the car, 17-year-old Neil Schulke, had been drinking beer furnished by two friends, Cherie Hadley and John Hildebrandt, who were over the age of 18. The statutes prohibit furnishing fermented malt beverages to persons under 18 years of age.[2] William Harmann, Jr., and his parents, the plaintiffs, commenced this action on September 9, 1983, alleging, *inter alia*, that Hadley and Hildebrandt were negligent in furnishing the intoxicating beverages and that such negligence caused the plaintiffs' injuries. Plaintiffs' complaint, in pertinent part, reads:

"21. Immediately prior to the above-described personal injuries and damages of the plaintiffs, the defendants Cherie Hadley and John Hildebrandt, jointly and severally furnished intoxicating beverages to defendant Neil Schulke with full knowledge and intent that said intoxicating beverages would be consumed by defendant Neil Schulke and with full knowledge that defendant Neil Schulke would be operating the said motor vehicle after consumption of the said intoxicating beverages with plaintiff William Harmann, Jr., as a guest-passenger therein. Such conduct on the part of defendants Cherie Hadley and John Hildebrandt was in violation of Wis. Stats., Section 125.07 and and other applicable law.

"22. After defendants Hadley and Hildebrandt supplied defendant Neil Schulke with the said intoxicating beverages, defendant Neil Schulke consumed the same in the presence of defendants Hadley and Hildebrandt and shortly thereafter operated the said

[2] In *Koback* the statutory provisions were secs. 66.054(20)(a) and 176.30(2), Stats. 1979–80. This case involves a comparable statute, sec. 125.07, Stats. 1981–82.

1972 Ford Grand Torino while under the influence of said intoxicating beverages at the time of the injuries and damages referred to in paragraphs 13 and 14 hereinabove.

"23.   Supplying of the said intoxicating beverages to defendant Neil Schulke under the circumstances set forth above constituted negligence and such negligence was a proximate cause or substantial factor in causing the injuries and damages of the plaintiffs. By virtue thereof, defendants Hadley and Hildebrandt are jointly and severally liable to the plaintiffs for the aforedescribed personal injuries and damages."

The plaintiffs argue that neither *Sorensen* nor *Koback* governs this case. *Sorensen* governs the liability of a commercial vendor who negligently sells intoxicating beverages to a minor. *Koback* governs the liability of a social host who negligently furnishes intoxicating beverages to a minor. In determining that the *Sorensen* case was not dispositive of *Koback,* this court distinguished the facts in *Koback* from those in *Sorensen* on the basis of the different suppliers of the intoxicating beverages in the two cases—a commercial vendor and a social host. We went on to conclude in *Koback* that there was no overriding public policy reason to shield persons who were not commercial vendors from liability when their negligent serving of intoxicating beverages to a minor was contrary to the statute and was a substantial factor in causing injury.

The plaintiffs point out that the persons furnishing the intoxicating beverages to the minor driver in this case were neither commercial vendors nor social hosts; they were peers and friends of the minor driver. The plaintiffs assert that because this court has not de-

termined the liability of this class of suppliers, the case should be decided on its merits.

Although plaintiffs attempt to draw a distinction between peers and social hosts, both of whom violate the statutes by furnishing intoxicating beverages to a minor, we cannot find any real basis for this distinction. Our decisions in *Koback* and *Sorensen,* while couched in terms of common law negligence, rested on the defendants' violation of a statutory prohibition against furnishing intoxicating beverages to a minor. The violation of these statutes constitutes negligence *per se* and subjects the violator to tort liability. ". . . [T]he negligent supplier of an intoxicant to a minor, under the rules of Wisconsin tort law, may be liable in the same manner and to the same extent as any person who engages in negligent conduct." *Koback, supra* 123 Wis. 2d at 273.

Whether the defendants who furnish intoxicating beverages to a minor in contravention of state law do so at a formal gathering, such as the graduation party in *Koback,* or informally at a "local hang-out," their liability for their tortious conduct is the same. This case is not factually distinguishable from *Koback; Koback* therefore controls.

We must now determine whether the plaintiffs' claims for relief are barred by the *Koback* rule of prospectivity.

This court generally adheres to the " 'Blackstonian Doctrine' . . . that a decision which overrules or repudiates an earlier decision is retrospective in operation." *Fitzgerald v. Meissner & Hicks, Inc.,* 38 Wis. 2d 571, 575, 157 N.W.2d 595 (1968). The court has acknowledged that inequities may occur when a court departs

from precedent and announces a new rule of law. This court has, therefore, recognized exceptions to the "Blackstonian doctrine" and has used the device of prospective overruling, sometimes dubbed "sunbursting," to limit the effect of a newly announced rule. Sometimes the court will hold that a new rule applies only to future events;[3] more commonly the court will apply the new rule to the future events and to the case before the court which presents the opportunity to announce the new rule.[4] Other times the court will apply the new rule to cases in which the trial has not yet begun or in which the time for appeal has not yet expired.[5]

Prospective application of a judicial holding is a question of policy. An appellate court employs the technique of prospective overruling to mitigate hardships

---

[3] *Cf. May v. Skelley Oil Co.,* 83 Wis. 2d 30, 38, 264 N.W.2d 547 (1978) (rule prospective only). The *dicta* in *May* was repudiated in *Reiter v. Dyken,* 95 Wis. 2d 461, 473, 474, 290 N.W.2d 510 (1980).

[4] *See, e.g., Koback v. Crook,* 123 Wis. 2d 259, 277, 366 N.W.2d 857 (1985).

[5] *See, e.g., Bielski v. Schulze,* 16 Wis. 2d 1, 114 N.W.2d 105 (1962). Specifically, *Bielski* laid out the following rule:

"The new rules shall apply generally whether the cause of action has heretofore arisen or not except that they shall not apply in the following situations: (1) Where a judgment based upon the old rules has been entered and no motion to vacate it has been made or appeal taken before this date; (2) where verdicts have been rendered sufficient to dispose of the case under the former rules but where application of the new rules would require a new trial not required for other reasons; (3) when settlements have been effected with one co-tort-feasor in such manner as would sufficiently protect him from liability for contribution under the former rules." *Bielski, supra* 16 Wis. 2d at 19.

A similar rule was applied in *Wangen v. Ford Motor Co.,* 97 Wis. 2d 260, 300–301, 294 N.W.2d 437 (1980), in which we changed the burden of proof for punitive damages.

that may occur in the retroactive application of new rules. As explained by Judge Thomas Fairchild, Judge of the United States Court of Appeals for the Seventh Circuit and previously a justice of this court, the use of the sunbursting technique relieves some pressure against departure from precedent and serves the same social interest in stability that is the root of *stare decisis.*[6] "Inherent in a court declaring that a decision should apply prospectively only is a determination that a compelling judicial reason exists for doing so." *Dupuis v. General Casualty Co.,* 36 Wis. 2d 42, 45, 152, N.W.2d 884 (1967).

There is no simple rule to guide the court in deciding whether or not to sunburst or how to sunburst a decision. As commentators have frequently noted, neither state nor federal courts have developed a consistent approach to sunbursting. Rather, the equities peculiar to a given rule or case determine the rule adopted by the court.[7]

---

[6] Fairchild, *Limitation of New Judge-Made Law to Prospective Effect Only: "Prospective Overruling" or "Sunbursting,"* 51 Marq. L. Rev. 254 (1967–68).

[7] For discussions of the different approaches to prospective overruling, see Bender, *The Retroactive Effect of an Overruling Constitutional Decision: Mapp v. Ohio,* 110 U. Pa. L. Rev. 650 (1962); Beytagh, *Ten Years of Non-Retroactivity: A Critique and a Proposal,* 61 Va. L. Rev. 1557 (1975); Corr, *Retroactivity: A Study in Supreme Court Doctrine "As Applied,"* 61 N.C.L.Rev. 745 (1983); Currier, *Time and Change in Judge-Made Law: Prospective Overruling,* 51 Va. L. Rev. 201 (1965); Friedmann, *Limits of Judicial Lawmaking and Prospective Overruling,* 29 Mod. L. Rev. 593 (1966); Haddad, *"Retroactivity Should Be Rethought:" A Call for the End of the Linkletter Doctrine,* 60 J. Crim. L. & Criminology 417 (1969); Moody, *Retroactive Application of Law-Changing Decisions in Michigan,* 28 Wayne L. Rev. 439 (1982); Perrello & Golembiewski,

This court has said that "[r]etroactive operation has been sometimes denied where there has been great reliance on an overruled decision by a substantial number of persons and considerable harm or detriment could result to them. It has also been denied where the purpose of the new ruling cannot be served by retroactivity, and where retroactivity would tend to thrust an excessive burden on the administration of justice." *Fitzgerald v. Meissner & Hicks, Inc., supra* 38 Wis. 2d at 576.

---

*Retroactivity of California Supreme Court Decisions: A Procedural Step Toward Fairness,* 17 Cal. W.L. Rev. 403 (1981); Schaefer, *The Control of "Sunbursts:" Techniques of Prospective Overruling,* 42 N.Y.U. L. Rev. 631 (1967); Schwartz, *Retroactivity, Reliability, and Due Process: A Reply to Professor Mishkin,* 33 U. Chi. L. Rev. 719 (1966); Shaefer, *Prospective Rulings: Two Perspectives,* 1982 Supreme Ct. Rev. 1; Snyder, *Retrospective Operation of Overruling Decisions,* 35 Ill. L. Rev. 121 (1940); Traynor, *Quo Vadis, Prospective Overruling: A Question of Judicial Responsibility,* 28 Hastings L.J. 533 (1977); Traynor, *Transatlantic Reflections on Leeways and Limits of Appellate Courts,* 1980 Utah L. Rev. 255; Note, *United States v. Johnson: Reformulating The Retroactivity Doctrine,* 69 Cornell L. Rev. 166 (1983); Note, *Confusion in Federal Courts: Application of the Chevron Test in Retroactive-Prospective Decisions,* 1985 U. Ill. L. Rev. 117; Comment, *Prospective Application of Judicial Decisions,* 33 Ala. L. Rev. 463 (1982); Case Note, *Legal Method: Deciding the Retroactive Effect of Overruling Decisions" Lau v. Nelson,* 92 Wash. 2d 823, 601 P.2d 527 (1979), 55 Wash. L. Rev. 833–847 (1980); Note, *The Retroactivity of Minnesota Supreme Court Personal Injury Decisions,* 6 Wm. Mitchell L. Rev. 179 (1980); Note, *Prospective Overruling and Retroactive Application in the Federal Courts,* 71 Yale L.J. 907 (1962).

For cases discussing prospective and retroactive overruling, see Annotation, *Prospective or Retroactive Operation of Overruling Decision,* 10 A.L.R. 3d 1362 (1966).

When tort law is changed, the court is concerned about exposing to liability individuals and institutions who would have obtained liability insurance had they known they would no longer enjoy immunity.[8] In several cases abrogating tort immunities, we have therefore held that the decision applies to the case at bar and cases arising in the future. See, *e.g., Kojis v. Doctors Hospital,* 12 Wis. 2d 367, 107 N.W.2d 131, 107 N.W.2d 292 (1961) (abrogating charitable immunity); *Holytz v. Milwaukee,* 17 Wis. 2d 26, 115 N.W.2d 618 (1962) (abrogating governmental immunity); *Widell v. Holy Trinity Catholic Church,* 19 Wis. 2d 648, 121 N.W.2d 249 (1963) (abrogating immunity of religious entity).

Furthermore, in tort cases the court is concerned that courts would have to relitigate cases already disposed of by previous litigation or settlements. Thus in *Bielski v. Schulze,* 16 Wis. 2d 1, 19, 114 N.W.2d 105 (1962), we limited the retroactive effect of our decision by applying the doctrine of comparative negligence to cases in which no final judgment had been entered.

In *Koback,* we followed the reasoning of *Sorensen* and decided to "sunburst" the rule of liability.

We concluded in *Koback* that the new rule of liability should be applied to the parties in that case. Ordinarily the party who successfully persuades the court to overrule an earlier decision receives the benefit of the decision. Although such a result may be harsh to the defendant it is fair to the party who has gone to considerable effort and expense pursuing the claim. A contrary result would discourage people from bringing

---

[8] In contract and property cases, the "reliance" argument generally focuses on whether the legally significant event, such as signing a contract or buying a piece of property, was made in reliance on then-existing precedents.

claims. A totally prospective holding is "prophetic dictum."[9]

We further concluded in *Koback* that the rule of liability should be applied to conduct occurring four months after the *Koback* decision was filed, that is, to conduct occurring on or after September 1, 1985, to enable social hosts to obtain liability insurance coverage if they did not already have it.

When a new rule of liability is "sunburst" to apply to the parties in the case and to future conduct, the application of the rule may produce inequities. The party who happens to present the question when it is ripe for consideration is the chance beneficiary of our decision, to the exclusion of all others who may have been diligently pressing for the change in law. The Harmanns assert that they have been diligently pressed for a change in the law and that the inequity of dismissing their complaint is evident when the procedural history of this case is compared with those of the *Koback* and *Sorensen* cases.

We set forth the pertinent history of the three cases in the following chart form for ease of comparison:

|  | Koback | Harmann | Sorensen |
|---|---|---|---|
| Date of accident | 6/16/82 | 6/25/82 | (not applicable) |
| Complaint filed | 1/07/83 | 9/09/83 | (not applicable) |
| Motion to dismiss granted by cir. ct. | 5/01/84 | 12/13/83 | (not applicable) |
| Appeal filed | 5/25/84 | 1/20/84 | (not applicable) |

[9] Fairchild, *supra* note 6, 255 n. 4.

| Petition to bypass | | | |
|---|---|---|---|
| filed | 8/23/84 | 3/16/84 | 12/30/83 |
| S. Ct. decision | 9/12/84 | 4/10/84 | 3/05/84 |
| on bypass | (granted) | (denied) | (granted) |
| Oral argument | 10/30/84 | (not applicable) | 4/25/84 |
| S. Ct. dec. | 4/30/85 | (not applicable) | 6/28/84 |
| Ct. App. dec. | (none) | 5/29/85 | (none) |

The chance, but determinative, circumstance here is the timing of the Harmanns' petition to bypass. A judgment was filed in the *Harmann* case before one was filed in *Koback,* and the Harmanns filed a petition to bypass the court of appeals five months before the Kobacks did. Although this court's order denying a petition to bypass does not set forth a rationale for the denial, we sometimes deny a petition to bypass because another case raising the same or a similar issue is pending before this court. When the Harmann petition was being considered, oral argument had already been scheduled in the *Sorensen* case, in which the court was asked to change the rule of immunity and hold a commercial vendor liable for negligently selling intoxicating beverages to a minor. The Harmann petition appeared to raise a similar issue.

When this court has under consideration a case raising an issue similar to one raised in a petition to bypass or in a certification, it has several options. It may order the new case placed on the court calendar for oral argument or on brief consideration along with the prior case. The Harmann petition to bypass came to the court less than 30 days before *Sorensen* was to be argued. Under our internal operating procedures, cases are placed on the calendar at least 30 days before

the first day of that month's oral arguments. Since the *Harmann* petition to bypass came to the court within this 30-day period, we could not have scheduled the *Harmann* case alongside the *Sorensen* case. The court could have held the bypass petition pending the decision in *Sorensen,* or the court could have denied the bypass petition anticipating that the court of appeals would hold the case pending this court's decision in *Sorensen.* We apparently chose the latter course.

Contrary to expectations, the *Sorensen* decision was not dispositive of the *Harmann* case. This court then had the power to take jurisdiction of *Harmann,* which was then pending in the court of appeals. Sec. 809.61, Stats. 1983–84. We did not do so. Instead, while *Harmann* was pending in the court of appeals, we granted the *Koback* petition to bypass which raised the same issue as the *Harmann* petition to bypass. The court of appeals then apparently awaited our decision in *Koback* before addressing the *Harmann* appeal.

The Kobacks and the Harmanns were pursuing the same claims in the circuit court, the court of appeals, and this court during the same time period. Because of the procedural histories of the *Sorensen, Koback* and *Harmann* cases and our remanding *Harmann* to the court of appeals rather than holding it pending the outcome of *Sorensen,* the plaintiffs in *Koback* and *Sorensen* received the benefit of our new rules, while the *Harmann* plaintiffs did not.

A basic tenet in our judicial system is that individuals similarly situated should be treated similarly. When we examine the procedural histories of the *Sorensen, Koback* and *Harmann* cases, we find it is hard to justify denying the Harmanns the benefit of the *Koback* rule when months before *Koback* they pre-

384

sented the same issue to this court. Had we withheld our decision on the *Harmann* petition to bypass perhaps the Kobacks, rather than the Harmanns, would now be seeking relief from the rule of prospectivity.

The defendants argue that if we allow the Harmanns to pursue their claims, we would be opening up the floodgates and there would be no just stopping point. We do not believe that granting an exception under the unusual circumstances of this case will fling open the floodgates. Nor do we think granting an exception in this case works a grave injustice on the defendants. We subjected the defendants in *Koback* to liability, even though they did not have notice of our new rule, and we conclude the defendants in *Harmann* are situated similarly to the defendants in *Koback*.

The defendants call our attention to *Marshall v. Green Bay,* 18 Wis. 2d 496, 499, 118 N.W.2d 715 (1963), and *Niedfelt v. Joint School Dist.,* 23 Wis. 2d 641, 644, 127 N.W.2d 800 (1964), in which we strictly enforced our decision to apply a new rule adopted in *Holytz v. Milwaukee,* 17 Wis. 2d 26, 42, 115 N.W.2d 618 (1962), abrogating governmental immunity prospectively. The defendants urge us to follow a similar uniform policy with regard to the *Koback* rule of prospectivity. In *Niedfelt,* however, we made it clear that we could modify the rule of prospectivity if the equities of the situation compelled such a result. Our court, "unlike the House of Lords, has . . . rejected a doctrine of disability at self-correction." *Niedfelt, supra* 23 Wis. 2d at 644 (quoting Justice Frankfurter). In *Olson v. Augsberger,* 18 Wis. 2d 197, 201, 118 N.W.2d 194 (1962), the court modified the language limiting the retroactive application of a new rule to except that case and to permit a

party to enjoy the new rule where it seemed unjust not to do so.

After comparing the procedural history of the *Harmann* case with that of the *Koback* case, we conclude that the equities require us to refrain from applying the *Koback* rule of prospectivity literally to bar the Harmanns' claims. We cannot in all fairness deny the Harmanns their day in court. But for our decision to deny the *Harmann* petition to bypass, the *Harmann* case would have established the rule of liability and subjected the defendants in this case to liability. We hold that the procedural history of this case warrants our treating this case as an exception to the *Koback* rule of prospectivity.

For the reasons set forth, we reverse the decision of the court of appeals and the judgment of the circuit court and remand the cause to the circuit court for further proceedings.

*By the Court.*—The decision of the court of appeals is reversed; the judgment of the circuit court is reversed; the cause is remanded to the circuit court for further proceedings.