BURLINGTON NORTHERN, INC., Burlington Northern Railroad Company, and Burlington Northern Dock Corporation, Plaintiffs-Respondents-Cross Appellants,

v.

CITY OF SUPERIOR, Wisconsin, Defendant-Appellant-Cross Respondent.†

Court of Appeals

*Nos. 88–0701, 88–0702, 88–0703, 88–0704, 88–0705, 88–0706. Submitted on briefs November 14, 1988.—Decided February 7, 1989.*

(Also reported in 441 N.W.2d 234.)

† Petition to review denied.

For defendant-appellant-cross respondent there were briefs submitted by *James F. Lorimer* and *Bonnie A. Wendorff* of *Boardman, Suhr, Curry & Field* of Madison.

For plaintiffs-respondents and cross appellants there were briefs submitted by *Robert A. Schnur* and *Ellen M. Pokrass* of *Michael, Best & Friedrich* of Milwaukee.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.   This case involves claims regarding tax refunds brought by Burlington Northern Railroad Company, f/k/a/ Burlington Northern, Inc., and Burlington Northern Dock Corporation (hereinafter Burlington Northern) against the city of Superior to recover occupational taxes paid pursuant to sec. 70.40(1), Stats., for the tax years of 1977 through 1985.[1] In *Burlington Northern, Inc. v. City of Superior,* 131 Wis. 2d 564, 388 N.W.2d 916 (1986), the supreme court declared sec. 70.40(1) unconstitutional because it discriminated against interstate commerce in violation of the Commerce Clause. The supreme court remanded the matter for entry of an order consistent with its opinion. *Id.* at 584, 388 N.W.2d at 925.

Following that decision, the trial court entered judgment in favor of Burlington Northern. Superior then filed for relief from judgment pursuant to sec. 806.07, Stats. The trial court denied relief from the

---

[1]Pursuant to sec. 809.10(3), Stats., this court consolidates appeal Nos. 88–0701 through 88–0706.

judgment and Superior's request for the prospective application of *Burlington Northern*. Superior now appeals this denial. Burlington Northern cross-appeals, requesting that prejudgment interest be computed from the date the taxes were paid instead of as prescribed by sec. 74.73, Stats., from the date of filing the claim. We affirm the trial court's refusal to apply *Burlington Northern* prospectively only, but reverse its prejudgment interest computation.

In 1977, the legislature enacted sec. 70.40(1), which imposed an occupational tax on operators of iron ore concentrate docks within the state.[2] The tax was measured by the amount of iron ore concentrates handled by or over the dock during the tax year. This section, however, exempted iron ore concentrates produced in Wisconsin and handled over the docks. Pursuant to sec. 70.40(1), Burlington Northern paid Superior the tax every year under protest and filed suit for a refund under sec. 74.73, alleging the unconstitutionality of sec. 70.40(1).

In 1984, the trial court dismissed Burlington Northern's complaints. The trial court concluded that

---

[2]Sec. 70.40(1), Stats. (1983–84), provided:

> **Occupational tax on iron ore concentrates. (1)** Except as provided in sub. (6), *every person operating an iron ore concentrates dock in this state,* shall on or before December 15 of each year pay an annual occupational tax equal to 5 cents per ton upon all iron ore concentrates handled by or over the dock during the preceding year ending April 30 except that as of December 15, 1979, such tax shall apply to the year ending on the preceding December 31. *Iron ore concentrates taxed under ss. 70.37 to 70.395 are exempt from taxation under this section.* In this section "dock" means a wharf or platform for the loading or unloading of materials to or from ships. (Emphasis supplied).

*See also Burlington Northern,* 131 Wis. 2d at 568–69, 388 N.W.2d at 918–19.

sec. 70.40(1)'s tax exemption favoring Wisconsin-produced concentrates violated the Commerce Clause but was severable under sec. 990.001(11), Stats. Subsequently, Burlington Northern appealed and we certified the question to the supreme court.

On certification, the supreme court declared sec. 70.40(1) unconstitutional and concluded that the offending exemption for Wisconsin-produced iron ore concentrate was not severable. *Burlington Northern,* 131 Wis. 2d at 579, 388 N.W.2d at 923. The supreme court held that the tax exemption discriminated against interstate commerce because the exemption benefited Wisconsin-produced ore at the expense of out-of-state-produced ore. *Id.* at 578–79, 388 N.W.2d at 923. Reversing the trial court, the supreme court remanded the matter for entry of an order consistent with its opinion. The supreme court then denied Superior's petition for reconsideration. Superior's petition for certiorari to the United States Supreme Court was also denied in 107 S. Ct. 883 (1987).

On remand, the trial court granted judgment in favor of Burlington Northern ordering the taxes refunded plus prejudgment interest for the tax years 1977–1980. During the pendency of these cases, Burlington Northern continued to pay the tax under protest and filed complaints for the tax years 1981–1984. The trial court subsequently entered judgment in favor of Burlington Northern for the amount of tax paid between 1981–1984, including prejudgment interest. Burlington Northern filed its last refund complaint for its 1985 taxes. 1985 was the last year in which Burlington Northern was required to pay taxes.

In September, 1987, pursuant to sec. 806.07, Superior requested relief from the judgments entered against it. In its motion, the city requested that *Burlington*

*Northern* be applied prospectively only and that any prejudgment interest, if required, be computed from the date the claims were filed. In March, 1988, the trial court denied the city's request to apply *Burlington Northern* prospectively, but granted the city's request to compute the prejudgment interest from the date of Burlington Northern's refund claim pursuant to sec. 74.73. The trial court subsequently entered judgment in favor of Burlington Northern in the final 1985 tax refund case consistent with its previous order. Burlington paid $4,278,713 for the tax years 1977–1985.

Superior now appeals the trial court's refusal to apply *Burlington Northern* prospectively and the judgment requiring it to refund the taxes.[3] Burlington Northern cross-appeals the trial court's decision to compute prejudgment interest from the date of filing the claim.

## RETROACTIVE-PROSPECTIVE APPLICATION

Pursuant to sec. 806.07(1)(h), a trial court may reopen a judgment for reasons that justify relief from the operation of the judgment. Generally, an order granting or denying relief under sec. 806.07(1) will be upheld unless there has been a clear abuse of discretion. *Shuput v. Lauer,* 109 Wis. 2d 164, 177, 325 N.W.2d 321, 328 (1982). The question on review, however, is not whether the trial court abused its discretion but whether the supreme court's decision in *Burlington Northern* should be applied prospectively only. The prospective application of a judicial holding presents a

---

[3]Specifically, Superior appeals an order denying its motion for relief from the judgments with respect to the principal amount of tax refund and a judgment entered in the final 1985 tax refund case.

question of law. *See Harmann v. Hadley,* 128 Wis. 2d 371, 378, 382 N.W.2d 673, 676 (1986).[4] Questions of law are reviewed without deference to the trial court. *Boltz v. Boltz,* 133 Wis. 2d 278, 282, 395 N.W.2d 605, 606 (Ct. App. 1986).

Generally, decisions are presumed to operate retroactively and therefore apply to the parties before the court and any other actions arising in the future. *Fitzgerald v. Meissner & Hicks, Inc.,* 38 Wis. 2d 571, 579–80, 157 N.W.2d 595, 599 (1968).[5] Prospective overruling, sometimes referred to as sunbursting, is a judicial exception to the rule that limits the effect of a newly-announced rule. *Harmann,* 128 Wis. 2d at 378, 382 N.W.2d at 676. The court explained:

> Sometimes the court will hold that a new rule applies only to future events; more commonly the court will apply the new rule to the future events and to the case before the court which presents the opportunity to announce the rule. Other times the court will apply the new rule to cases in which the trial has not yet begun or in which the time for appeal has not yet expired.

*Id.*

Because the supreme court in *Burlington Northern* declared sec. 70.40(1) unconstitutional, Superior requests this court to invoke the prospective doctrine and relieve it from refunding the taxes Burlington paid. We

---

[4]Specifically, *Harmann* states that the prospective application of a decision is a question of public policy. We interpret this to mean a question of law.

[5]Although this case refers only to the retroactive application of judicial cases, we interpret this to include the principle's application to statutes that have also been overruled.

agree with the parties that there are no Wisconsin cases that discuss the prospective doctrine as it relates to tax refund cases.[6] In *Harmann,* a case involving the applicability of the new liability assumed by adult social hosts serving minors, the supreme court adopted a balancing approach in which equitable principles were adopted as the controlling guide to determining prospectivity. The court said:

> The equities peculiar to a given rule or case determine the rule adopted by the court. ... "Retroactive operation has been sometimes denied where there has been great reliance on an overruled decision by a substantial number of persons and considerable harm or detriment could result to them. It has also been denied where the purpose of the new ruling cannot be served by retroactivity, and where retroactivity would tend to thrust an excessive burden on the administration of justice."

*Id.* at 379–80, 382 N.W.2d at 676–77 (quoting *Fitzgerald,* 38 Wis. 2d at 576, 157 N.W.2d at 597).

In addition, both parties discuss the principles of prospectivity first announced in *Chevron Oil Co. v. Huson,* 404 U.S. 97 (1971), and applied by federal courts. In *Chevron,* the United States Supreme Court held that a supreme court decision may be limited to

---

[6]*See Gottlieb v. City of Milwaukee,* 33 Wis. 2d 408, 147 N.W.2d 633 (1967). In *Gottlieb,* the supreme court invalidated a portion of the Urban Redevelopment Law, which provided partial exemptions, grants and other economic inducements to redeveloping corporations. The court declared its decision to be prospective because a retroactive application would create fiscal problems for the city of Milwaukee. The court did not discuss the equities involved, but acknowledged that a retroactive application would also impair the rights of some redeveloping contractors who relied on the law. *Id.* at 432, 147 N.W.2d at 645–46.

prospective application where: (1) the decision to be applied establishes a new principle of law either by overruling clear past precedent on which the parties have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed; (2) the retroactive application will further or retard the operation of the new law; and (3) retroactive application will produce substantially inequitable results. *Id.* at 106–07.[7] We base our discussion of the prospectivity doctrine upon the guidelines adopted under *Harmann* and *Chevron.*

Applying *Chevron,* the trial court concluded that (1) *Burlington Northern* did not declare a new principle of law; (2) a retroactive application of *Burlington Northern* would not retard *Burlington Northern;*[8] and (3) the city failed to produce any evidence that established a benefit to Burlington Northern from the taxes it had paid or a burden Superior would endure if required to refund the taxes.

Superior contends that the trial court misapplied the *Chevron* test in this instance. First, Superior contends that the Wisconsin Supreme Court decision invalidating sec. 70.40(1) was not clearly foreshadowed and that the court established a new principle of law when it held that the statute facially discriminated against interstate commerce without an actual showing

[7]Burlington Northern argues that the first prong of *Chevron* is a threshold requirement that must be met before the remaining prongs are applied. Although Burlington Northern's authority, *Jordan v. Weaver,* 472 F.2d 985, 996 (7th Cir. 1973), *rev'd and remanded on other grounds,* 415 U.S. 651 (1974), may be persuasive, we examine the test in its entirety.

[8] It appears that the trial court discussed the second and third prongs of *Chevron* together.

that Wisconsin producers benefited from the exemption. We disagree.

It is well-established law that a state may not tax conduct that discriminates against goods or services from out of state. *See Burlington Northern,* 131 Wis. 2d at 574, 388 N.W.2d at 921 (citing *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 279 (1977)); *see also Maryland v. Louisiana,* 451 U.S. 725, 754 (1981); *Department of Revenue v. Exxon Corp.,* 90 Wis. 2d 700, 724, 281 N.W.2d 94, 107 (1979), *aff'd,* 447 U.S. 207 (1980); *Midwestern Gas Trans. Co. v. Department of Revenue,* 84 Wis. 2d 261, 270, 267 N.W.2d 253, 257–58, *cert. denied,* 439 U.S. 997 (1978). States may tax interstate conduct if the tax is applied to an activity with a substantial nexus within the state, if the tax is fairly apportioned, or if the tax does not discriminate against interstate commerce. *Burlington Northern,* 131 Wis. 2d at 574, 388 N.W.2d at 921.

In *Burlington Northern,* the supreme court held that sec. 70.40(1) discriminated against interstate commerce by favoring Wisconsin producers, which were exempted from taxation under the dock statute. *Burlington Northern,* 131 Wis. 2d at 575, 388 N.W.2d at 921. The supreme court concluded that even though Burlington Northern passed the cost of the tax on to its customers, Wisconsin producers were not affected by the tax and therefore the tax made it more advantageous for Wisconsin producers at the expense of out-of-state producers. As early as 1959, the United States Supreme Court held that no state, consistent with the Commerce Clause, may "impose a tax which discriminates against interstate commerce ... by providing direct commercial advantage to local business." *North-*

*western States Portland Cement Co. v. Minnesota,* 358 U.S. 450, 458 (1959).

This principle was reaffirmed in *Boston Stock Exchange v. State Tax Comm'n,* 429 U.S. 318 (1977), where the Supreme Court declared an amendment to a New York stock transfer statute unconstitutional. The statute which imposed a transfer tax on securities sold or transferred[9] outside the state was held discriminatory because it provided a direct local advantage to local business (New York Stock Exchange). Similarly, the Wisconsin Supreme Court in *Burlington Northern* concluded:

> This state may not use any portion of its tax code to provide a commercial advantage to local business at the expense of interstate commerce. The only real effect of the exemption in sec. 70.40(1) is to enhance or encourage the Wisconsin metalliferous mining industry at the expense of out-of-state miners. Such a plan "falls short of the substantially evenhanded treatment demanded by the Commerce Clause."

*Id.* at 576, 388 N.W.2d at 921–22 (citing *Boston Stock Exchange,* 429 U.S. at 332). In this instance, the invalidation of a statute that discriminates against interstate commerce by favoring local business was foreshadowed by the United States Supreme Court in *Boston Stock Exchange.*

Superior also contends that *Burlington Northern* was not foreshadowed because courts only recently have begun to invalidate tax statutes that facially discriminate against interstate commerce without a showing of

---

[9] "[Even though] New York's discriminatory treatment of out-of-state sales is made possible only because some other taxable event (transfer, delivery, or agreement to sell) takes place in the State." *Boston Stock Exchange,* 429 U.S. at 336.

actual discrimination. *See Bacchus Imports, Ltd. v. Dias,* 468 U.S. 263 (1984). In *Burlington Northern,* the supreme court concluded that: "Merely because Wisconsin producers of taconite did not ship their product across Burlington Northern's docks does not mean that the tax exemption is not discriminatory. State tax legislation may be discriminatory on the basis of either purpose or effect." *Id.* at 578, 388 N.W.2d at 923 (citing *Bacchus Imports,* 468 U.S. at 273). The supreme court's discussion merely supplements the well-developed and established principle that states must treat all commerce within its borders evenhandedly.

Second, we believe that a prospective application of *Burlington Northern* would retard its purpose and effect by ignoring the supreme court decision to remand. In its discussion, the supreme court determined that *Burlington Northern* represented a consolidation of suits brought for refund of taxes and declaratory judgment. *Id.* at 572, 388 N.W.2d at 920. After declaring sec. 70.40(1) unconstitutional, it remanded the cause for entry of an order consistent with its opinion. *Burlington Northern,* 131 Wis. 2d at 584–85, 388 N.W.2d at 925. A prospective application of *Burlington Northern* would only frustrate the supreme court's remand to refund Burlington Northern's taxes.

Third, the trial court's refusal to apply *Burlington Northern* prospectively only will not result in substantial inequity. Superior contends that it acted in reasonable reliance on the presumed validity of a state tax statute and merely fulfilled its duty to collect and spend the money on behalf of all its taxpayers. Also, the city argues that the refund will be especially burdensome because the tax funds have been spent and, furthermore, the refund must be added to the next tax

levy pursuant to sec. 66.09, Stats. We are not persuaded.

Reliance on the presumed validity of a tax statute is not enough to justify prospective application in this instance. Here, Burlington Northern paid its taxes under protest and filed a complaint for its refund during the relevant taxable years, thus notifying Superior that it was challenging the statute's validity. If we were to accept Superior's theory, reliance in this manner would bar a tax refund in any situation where the tax was declared unconstitutional.

Finally, we reject Superior's argument that Burlington will receive a windfall if the taxes are refunded. First, both parties agree that Burlington is contractually obligated to reimburse their customers for the tax costs it passed on to their customers.[10] Second, while the sum above this reimbursement and the interest Burlington Northern will collect is substantial, it does not constitute a windfall or justify denying its refund. The challenge began since the statute's enactment and resulted in a supreme court remand to refund the taxes paid. In fact, if the supreme court's decision in *Burlington Northern* were applied prospectively, Superior would be receiving a windfall since it would be allowed to retain imposed and collected taxes that were based upon an unconstitutional statute. The city should not benefit, nor should the taxpayer suffer a loss when payment is made pursuant to an unconstitutional tax. After balancing the equities in this case, we are

---

[10]Superior alleges that Burlington Northern is contracted to reimburse its customers interest at the rate of 4%.

satisfied that a retroactive application of *Burlington Northern* would not produce inequitable results.[11]

## PREJUDGMENT INTEREST

In its cross-appeal, Burlington Northern alleges that the trial court erroneously computed its prejudgment interest. The trial court concluded that, pursuant to sec. 74.73(1r), Stats.,[12] Burlington Northern was entitled to prejudgment interest from each tax claim's filing date. Section 74.73(1r) reads:

> Any person aggrieved by the levy and collection of any unlawful tax assessed against him may file a claim therefor against the town, city or village which collected such tax in the manner prescribed by law for filing claims in other cases. If it appears that the tax for which such claim was filed or any part thereof is unlawful and that all conditions prescribed by law for the recovery of unlawful taxes have been complied with, the town board, village board or common council may allow and the town, city or village treasurer shall pay such person the amount of the claim found to be unlawful and excessive. *If any town, city or village fails or refuses to allow the claim, the claimant may have and maintain an action against the same for the recovery of all money so unlawfully levied and collected,*

---

[11]We note that Superior compiled an impressive list of recent cases that have been remanded to various state appellate courts for determination of a tax refund. Space does not allow us to distinguish each case listed. In light of *Burlington Northern*'s remand and our application of *Chevron* and *Harmann*, the equities tip in favor of Burlington Northern. Different results occur because the facts, complexities, and equities vary with each case.

[12] 1987 Act 378, effective January 1, 1989, repealed and recreated Chapter 74 of the statutes. Portions of sec. 74.73 were repealed and the remaining recreated as sec. 74.35.

*together with interest at the legal rate computed from the date of filing the claim.* Every such claim shall be filed, and every action to recover any money so paid shall be brought, within one year after such payment. (Emphasis supplied.)

Burlington Northern contends that the trial court erred when it determined the tax as "unlawful" under sec. 74.73. Section 74.73(1g) defines an unlawful tax as:

    **(1)** When a clerical error has been made in the description of the property or in the extension of the tax.

    **(2)** When improvements on lots were considered in making the assessment roll, where the improvements did not exist at the time fixed by law for making the assessment.

    **(3)** When the property is exempt by law from taxation.

    **(4)** When a person has been assessed the same year for the same property in more than one ward or place.

    **(5)** When a double assessment has been made.

    **(6)** When a palpable error had been made in the assessment, in which case the error may be corrected. (Enumerated in sec. 74.135, Stats.)[13]

Burlington Northern alleges that sec. 74.73(1r) is inapplicable when the tax is void, entitling it to prejudgment interest from the date of each tax payment. This issue requires the interpretation of sec. 74.73(1r) and its application to this particular set of facts. This involves a question of law that is decided without deference to the trial court. *Boltz,* 133 Wis. 2d at 282, 395 N.W.2d at 606.

---

[13] 1987 Act 378, effective January 1, 1989; sec. 74.135 repealed and recreated as sec. 74.33.

Burlington Northern asserts that sec. 74.73(1r) applies only if the tax were voidable, which we understand to mean unlawful within sec. 74.73(1g) limits. Because sec. 70.40(1) was declared unconstitutional, Burlington Northern contends that Superior was without jurisdiction to levy the tax and therefore sec. 74.73(1r) is inapplicable. We agree. The invalidity of sec. 70.40(1) rendered Superior's tax assessment void ab initio or from the beginning.

Burlington Northern cites *Family Hospital Nursing Home v. City of Milwaukee,* 78 Wis. 2d 312, 254 N.W.2d 268 (1977), as authority for its assertion. The trial court concluded that subsequent amendments to sec. 74.73 legislatively overruled *Family Hospital.* In *Family Hospital,* the supreme court held nursing home property exempt from taxation. The issue, however, before the court was whether the taxpayer was barred from its refund because it failed to file its claim within sec. 74.73's statute of limitation. The supreme court refused to apply the sec. 74.73 statute of limitation because it concluded that the tax was void ab initio. *Family Hospital,* 78 Wis. 2d at 326, 254 N.W.2d at 276.

Recent amendments to sec. 74.73 include tax collected from exempt property as "unlawful" within the meaning of sec. 74.73 and limits prejudgment interest to the date of the claim's filing. Nonetheless, sec. 74.73 does not define a tax collected pursuant to an unconstitutional statute as unlawful. Therefore, the statute's limit on the date from which prejudgment interest accrues would not apply in such instances. Burlington Northern correctly argues that sec. 74.73's limit on prejudgment interest is inapplicable because the tax was void ab initio and not unlawful within the meaning of sec. 74.73. Furthermore, permitting Superi-

or to retain the use of money from payment of the date of filing would result in a benefit from a tax statute declared unconstitutional. A taxpayer should not suffer loss when payment is made in situations such as this one. Consequently, that portion of the judgment is reversed and the matter is remanded to the trial court with directions to compute prejudgment interest from the date of the tax payment.

*By the Court.*—Judgments affirmed in part, reversed in part, and cause remanded.